Annie Florence Gunn Farris appeals the circuit court's denial of her Rule 32, Ala.R.Crim.P., petition for postconviction relief, in which she attacked her 2000 conviction for reckless manslaughter and her resulting sentence of eight years' imprisonment. This Court affirmed Farris's conviction and sentence on direct appeal in an unpublished memorandum issued on August 24, 2001. See Farris v. State, (No. CR-99-2127),837 So.2d 885 (Ala.Crim.App. 2001) (table). The Alabama Supreme Court denied certiorari review, and this Court issued a certificate of judgment on November 16, 2001.
In its unpublished memorandum, this Court set out the facts of the case as follows:
 "At dusk on April 6, 1999, Brian Maddux and his friend Amy Givorns were traveling south on Interstate 85 in Maddux's Chevrolet Tahoe [sport utility vehicle]. Maddux was driving in the left lane at approximately 75 miles per hour, drinking a beer and talking to Givorns. Givrons suddenly noticed a vehicle stopped in the lane in front of them and warned Maddux. He swerved into the right lane, then turned back left, and lost control of the vehicle. The Tahoe flipped several times and Maddux, who was not wearing a seatbelt, was thrown into the left northbound lane. He then was struck and killed by an oncoming truck. Givrons testified that the car they swerved to avoid was a light-colored Oldsmobile sedan with its brake lights on. Jamie Sikes, who was traveling immediately behind Maddux and Givrons, testified that the vehicle Maddux swerved to avoid was a boxy white car with white taillights that he assumed were `reverse lights.' At the scene, Sikes examined [Farris's] car, which was a white 1987 Oldsmobile Cutlass, and identified it to officers as the vehicle that caused the accident. Christina Moulder, who was traveling 3 or 4 cars behind Maddux, testified that her vehicle had to swerve to avoid a small white car that was stopped almost dead in the middle of the left lane with its back-up lights on. After the accident, she saw the car parked in the median with its lights off. The truck driver who struck the victim testified that the only car he saw was white or light colored, and it *Page 190 
was parked in the median after the accident. [Farris] subsequently testified in her own behalf that she had attended a 6:00 o'clock PTO meeting and open house and then had picked up some catfish from a friend. As she was going home, she arrived at the scene of the accident and decided to stop. She pulled into the median and then was unable to start her car. She stated that she was not at the scene when the accident occurred."
Farris filed the present petition on November 29, 2001, claiming that newly discovered evidence entitled her to a new trial. She filed an amended petition on January 11, 2002, claiming that her trial counsel was ineffective for various reasons; that the judge who presided over her trial should have recused himself; that she was actually innocent of the crime; and that her eight-year sentence violates her right to equal protection. After the State filed responses to Farris's petition and the amended petition, the circuit court conducted a hearing on May 2, 2002. On December 2, 2002, the circuit court issued a detailed order denying the petitions.
On appeal, Farris pursues only two of the claims she raised in her petitions. Those claims she presented in her petition and the amended petition, but does not pursue on appeal, are deemed abandoned. See, e.g., Brownlee v. State, 666 So.2d 91, 93
(Ala.Crim.App. 1995) ("We will not review issues not listed and argued in brief.").
Farris contends that her trial counsel was ineffective for not properly investigating the case. (Issue II in Farris's brief.) This claim, however, is barred by Rule 32.2(a)(2) and (4), Ala.R.Crim.P., because Farris challenged her trial counsel's effectiveness in her motion for a new trial and on direct appeal.
Farris also contends that newly discovered evidence entitles her to a new trial. (Issue I in Farris's brief.) She argues that she only recently discovered two witnesses who witnessed the fatal accident and whose testimony could exonerate her of the crime. Specifically, she argues:
 "It is undisputed that the victim was killed in a traffic accident when he lost control of his SUV when he swerved to avoid hitting a light color/white vehicle in the left lane of the southbound traffic of I-85. It is also undisputed that Farris owned a white 1987 Oldsmobile Cutlass. The only real dispute at trial and in her Rule 32 petition is whether Farris's vehicle was the cause of the accident that resulted in the death of Brian Maddux. Obviously, the State's position from the beginning has been that Farris was driving her vehicle recklessly on I-85 South and that it was her vehicle that Maddux swerved to avoid hitting. The jury believed the State's position at trial and convicted Farris of reckless manslaughter. Farris has always maintained that she was driving home on I-85 South in her white Oldsmobile and that she arrived on the scene of the accident after the fact. The accident had already occurred, and Mr. Maddux was allegedly dead. Therefore, she could not have been the cause of the accident; Brian Maddux swerved to miss some other light color/white car and not hers."
(Farris's brief at pp. 9-10.)
At the Rule 32 hearing, Larry Gibson and Luvenia Hughley testified that they were traveling in the left lane of I-85 South when they had to swerve to the right to miss a white Lincoln Continental or Lincoln Towncar automobile (not a white Oldsmobile like Farris was driving) that was either stopped or backing up in the left lane of I-85 South; that the occupants of the Lincoln automobile were four *Page 191 
or five elderly white persons (Farris is African-American); that when the driver of the sport utility vehicle traveling behind the Lincoln swerved to miss it, the driver lost control and the vehicle flipped several times; and that after they had pulled over to telephone emergency 911, the Lincoln automobile continued south on I-85, without stopping.[1]
Rule 32.1(e), Ala.R.Crim.P., provides for relief from a conviction on the following ground:
 "(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
 "(1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
 "(2) The facts are not merely cumulative to other facts that were known;
 "(3) The facts do not merely amount to impeachment evidence;
 "(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
 "(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received."
In its order denying Farris's petition, the circuit court stated the following, in pertinent part, with respect to the newly-discovered-evidence claim:
 "Larry Gibson and Luvenia Hughley testified at the evidentiary hearing but not at trial. Mr. Gibson and Ms. Hughley were riding together in Mr. Gibson's Dodge Dakota pickup on the date of the accident. Both testified the victim's vehicle tailgated Mr. Gibson's truck and that they were directly behind the vehicle (white Lincoln Towncar) backing up on the interstate, the occupants of which were four or five elderly white people. Mr. James Sikes, Jr. testified at trial that he was traveling directly behind the victim's vehicle, when he and the victim both swerved to miss the car (white older box-looking car) backing up on the interstate. Mr. Sikes, in his trial testimony, makes no mention of another car or truck between the victim's vehicle and the car backing up on the interstate. Mr. Sikes also makes no mention of any other white vehicle traveling in close vicinity to his or the victim's vehicle on the interstate. Mr. Sikes's testimony was that there were three cars which swerved, his vehicle, the victim's vehicle, and a vehicle to his right. Mr. Gibson testified that after witnessing the accident, he continued traveling possibly a quarter of a mile and pulled off to the right shoulder of the southbound lane to call 911. Mr. Gibson stated that he could not see what was going on at the accident site. Ms. Hughley, on the other hand, testified that Mr. Gibson pulled over quickly to call 911 and she could still see the accident from where they were parked.
 "Mr. Gibson also testified that he knows Mrs. Farris and that his sister, *Page 192 
Rosie Minifee, lives across the street from Mrs. Farris. Mr. Gibson testified that he learned about Mrs. Farris's trial through his sister. The Court finds Mr. Gibson's and Ms. Hughley's testimonies are purported facts that merely attempt to impeach the evidence presented at trial."
(C. 76-77.) (Citations to record omitted.)
This Court is unclear as to what the circuit court meant when it stated that the testimony of Gibson and Hughley "are purported facts that merely attempt to impeach the evidence presented at trial." (C. 77.) Although the court used the term "impeach," it also pointed out inconsistencies between Gibson's and Hughley's testimony at the Rule 32 hearing as well as the fact that Gibson's and Hughley's testimony directly contradicted the testimony that had been presented at Farris's trial. Based on its order, it is not clear whether the circuit court found that Gibson's and Hughley's testimony was actually "impeachment" evidence under Rule 32.1(e)(3), Ala.R.Crim.P., or whether the court determined that the testimony presented at the Rule 32 hearing, which, as the circuit court correctly found, did nothing more than contradict the evidence that had been presented at trial, was not credible and, thus, that the outcome of Farris's trial would not have been different had the testimony been presented to the jury, see Rule 32.1(e)(4), Ala.R.Crim.P.
Gibson's and Hughley's testimony was not impeachment evidence. In addressing what constitutes impeachment evidence under Rule 32.1(e)(3), Ala.R.Crim.P., in Banks v. State, 845 So.2d 9
(Ala.Crim.App. 2002), this Court stated:
 "Black's Law Dictionary 755 (7th ed. 1999) defines `impeach' as `[t]o discredit the veracity of (a witness).' The evidence is not impeaching in that Banks did not seek to discredit the veracity of any witnesses. Rather, the results of the [medical test] served to controvert, that is, disputed the State's witnesses's findings and opinions, not their credibility."
845 So.2d at 26. Similarly, here, Gibson's and Hughley's testimony at the Rule 32 hearing did not tend to discredit the veracity of the State's witnesses. It disputed their observations, recollections, opinions, and conclusions with regard to the fatal wreck and, thus, contradicted the State's evidence at trial. However, contradictory evidence is not impeachment evidence.
Nevertheless, the circuit court's specific reference in its order to the contradictory nature of the testimony presented at the Rule 32 hearing suggests that it may have been making a finding that the testimony of Gibson and Hughley was not credible and, thus, would not entitle Farris to a new trial.
 "A petition for writ of error coram nobis on grounds of newly discovered evidence does not ask the trial judge to substitute his judgment for that of the jury. It requires the trial court to weigh evidence other than what the jury had before them at trial, and it requests the court to determine whether, based on evidence the jury did not hear, the petitioner is entitled to a new trial.
 "Thus, a trial court who rules on whether newly-discovered evidence entitles a petitioner to a retrial cannot usurp the function of the original jury. Unlike a trial judge who grants a post-judgment motion for new trial based on his own belief that the jury verdict was wrong, a court which grants a coram nobis petition on grounds of newly-discovered evidence has not determined that the jury verdict was in error. Instead, he has found that, notwithstanding the sufficiency of the evidence originally testified, the newly-discovered *Page 193 
proof, had it been known, would have prevented the original conviction. . . .
 ". . . In [postconviction] motions, the trial court is necessarily required to determine the credibility of the allegedly-new proof, see Robinson v. State, 389 So.2d 144 (Ala.Crim.App.), cert. denied, 389 So.2d 151 (Ala. 1980); Prince v. State, 356 So.2d 750 (Ala.Cr.App. 1978), and he does not invade the province of the jury by making that determination."
McDonald v. State, 437 So.2d 1337, 1341-42 (Ala.Crim.App. 1982) (Harris, P.J., dissenting), adopted by the Alabama Supreme Court in Ex parte McDonald, 437 So.2d 1342 (Ala. 1983).
Because it is not clear from the circuit court's order whether the court found that Farris's newly-discovered-evidence claim was meritless because the newly discovered evidence constituted impeachment evidence or because the newly discovered evidence was not credible, we must remand this case for the circuit court to clarify the basis for its denial of this claim. If the circuit court's original finding was that Gibson's and Hughley's testimony was merely impeachment evidence, that finding was error for the reasons stated above, and the circuit court should reconsider Farris's newly-discovered-evidence claim in light of the other requirements in Rule 32.1(e). If, on the other hand, the circuit court's original finding was that Gibson's and Hughley's testimony was not credible, the court should clarify that credibility choice and make a specific finding as to whether the outcome of Farris's trial would have been different had Gibson and Hughley testified. The court may grant Farris whatever relief it deems necessary. Due return shall be filed with this Court within 42 days of the date of this opinion. The return to remand shall include the circuit court's written findings and anything else the court believes will aid this Court in reviewing this issue.
REMANDED WITH DIRECTIONS.*
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] Although eight witnesses actually testified at the evidentiary hearing on Farris's petition, Farris discusses only the testimony of Gibson and Hughley in her brief on appeal. Therefore, we need not address the testimony of the six additional witnesses who testified at the evidentiary hearing.
* Note from the reporter of decisions: On November 21, 2003, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On January 23, 2004, that court denied rehearing, without opinion. On April 16, 2004, the Supreme Court denied certiorari review, without opinion (1030707).