MURDOCK, Justice.
In 1991, Carl Brad Ward was convicted of the murder of Jeanette Smith Little, and he was sentenced to life imprisonment. On direct appeal, the Court of Criminal Appeals affirmed the conviction and sentence. Ward v. State, 610 So.2d 1190 (Ala.Crim.App.1992).
In September 2008, Ward, acting pro se, filed the present Rule 32, Ala. R.Crim. P., petition, his second. Ward’s Rule 32 petition, as amended and “refiled,” alleged, among other things, that newly discovered material facts require his conviction to be vacated. Ward contends that he recently discovered reports of forensic tests that excluded him as a person who had handled a cigarette butt that was used at trial to link him to the crime scene. After the State responded, the circuit court summarily denied Ward’s amended petition by a written order. Ward appealed.
The Court of Criminal Appeals affirmed the circuit court’s denial of Ward’s second Rule 32 petition by an unpublished memorandum. Ward v. State (No. CR-08-1131, Sept. 25, 2009), 57 So.3d 210 (Ala.Crim.App.2009) (table). This Court granted *722 certiorari review as to Ward’s claim of newly discovered material facts and denied review as to his other claims.

1. Facts

The Court of Criminal Appeals summarized the facts of the underlying case in its unpublished memorandum as follows:
“Ward and Kenneth Gregory Long were indicted for the capital murder of Jeanette Smith Little, who was murdered during the course of a robbery. Ward’s case was severed from Long’s, and Ward was tried first.
“The State’s evidence established that Ward, who was a ‘trusty[5] at the Decatur City Jail, became acquainted with Little when she was briefly jailed following an arrest for [driving under the influence]. Sometime after Little was released from jail, a witness overheard Ward and Gregory Long talking about going to see Little, and discussing that she might have some money. On October 10,1990, Little’s body was found in her home. She had been dead for several days. Little had been stabbed multiple times, and her rings had been removed from her fingers after she died.
“A witness testified that Ward resembled a person that she had seen with Little around the time of Little’s death. Another witness testified that Ward and Long tried to sell him Little’s rings. The State presented additional circumstantial evidence that tied Ward to Little’s murder. The jury found Ward guilty of the lesser-included offense of murder, and Ward was sentenced to life imprisonment.”
A more detailed statement of facts is set out in the opinion disposing of Ward’s direct appeal. Ward, 610 So.2d at 1192-94.
The facts relating to Ward’s postconviction claim of newly discovered material facts are as follows:
Ward alleged in his Rule 32 petition that he was not present when his codefendant, Kenneth Gregory Long, murdered Little, that he obtained Little’s rings from Long, and that he was told that Long had gotten the rings as part of a drug deal. Ward alleged that Long died in prison and that Long allegedly confessed to another inmate that he had acted alone, that he had strangled Little to death in a jealous, drunken rage, and that he had attempted to cover up his crime by stabbing Little’s body after her death and taking her rings in order to make it appear that a robbery had occurred.
Ward alleged that he did not learn about Long’s prison statements until early 2008. Between April 2008 and August 2008, Ward made several attempts to obtain information on Little’s death from the Alabama Department of Forensic Sciences (“DFS”). On July 7, 2008, DFS responded that it had never had a death-investigation report on Little. After additional communication from Ward, DFS informed Ward on August 28, 2008, that a death-investigation report on Little’s death was available upon payment of a $10 fee. Ward paid the fee and, on September 29, 2008, he received a copy of the report (consisting of a cover letter and 26 attached “documents”). On October 10, 2008, after further correspondence, Ward received an additional 20 pages of documents relating to Little’s death.
In an affidavit submitted with his amended Rule 32 petition, Ward alleged as follows regarding the second set of documents provided to him by DFS on October 10, 2008:
“In the second set of records provided by the ADFS, I found the results of more evidence which had been withheld from my defense....
*723 “The third issue of newly discovered material facts centers around a ‘Merit’ [brand] cigarette butt from the living room, a wooden toothpick, and human seminal stains from the victim and her clothes. The test results clearly state[ ] that all three items — the toothpick, the Merit cigarette butt, and the semen came from the same person who had A and H antigens.
“In the [newly discovered] serological [1] tests of April 8, 1991 [prior to Ward’s trial in October 1991], ADFS results of blood analysis states that ‘neither Carl Ward nor Kenneth Long are indicated as the source of the semen.’ The test of November 30, 1990 matched the semen with the Merit cigarette butt and the toothpick.
“The problem here is that this evidence was never turned over to my defense. Not only was this withheld from my defense, the prosecution put a witness on the stand who testified to the Jury that I sometimes smoked ‘Merit’ cigarettes, and they presented this while knowing the Merit butt at the crime scene did not match me. This goes beyond just withholding evidence; this is unequivocal proof of prosecutorial misconduct.
“The prosecution presented to the Jury — Ward claims he wasn’t there, but here is this Merit cigarette butt at the crime scene, and here is a witness who knows Ward and .says he sometimes smokes Merit cigarettes — they presented this false prejudicial pretence [sic] while knowing for a scientific fact that the Merit cigarette butt did not match me, and, they withheld these test[ ] results from my defense so I could not rebut their insinuation to the Jury that the Merit could be mine.”
(Emphasis added.)[2]
On February 10, 2009, the State filed a response to Ward’s petition that did not specifically refute or even address Ward’s allegations relating to the Merit cigarette butt.[3] Ward filed a reply to the State’s response on February 23, 2009.
The circuit court did not hold an eviden-tiary hearing. Instead, on March 10, 2009, it summarily denied Ward’s Rule 32 petition by a written order that did not specifically address the evidence relating to the Merit cigarette butt.

II. Burden of Pleading Versus Burden of Proof in a Rule 32 Proceeding

“A claim may not be summarily dismissed because the petitioner failed to meet his burden of proof at the initial pleading stage, a stage at which the petitioner has only a burden to plead.” Johnson v. State, 835 So.2d 1077, 1080 (Ala.Crim.App.2001). See also Thomas v. State, 908 So.2d 308, 310 (Ala.Crim.App.2004) (to same effect). As the Court of Criminal Appeals explained in Ford v. State, 831 So.2d 641, 644 (Ala.Crim.App.2001):
*724 “[A]t the pleading stage of Rule 32 proceedings, a Rule 32 petitioner does not have the burden of proving his claims by a preponderance of the evidence. Rather, at the pleading stage, a petitioner must provide only ‘a clear and specific statement of the grounds upon which relief is sought.’ Rule 32.6(b), Ala. R.Crim. P. Once a petitioner has met his burden of pleading so as to avoid summary disposition pursuant to Rule 32.7(d), Ala. R.Crim. P., he is then entitled to an opportunity to present evidence in order to satisfy his burden of proof.”
With respect to the pleading requirements imposed on a petitioner, Rule 32.3 provides that the petitioner shall have the burden of pleading “facts necessary to entitle the petitioner to relief.” Rule 32.6(b) provides:
“The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
Where, as here, the State does not respond to the factual allegations in the Rule 32 petition, “ ‘the unrefuted facts set out in the petition must be taken as true.’ ” Chaverst v. State, 517 So.2d 643, 644 (Ala.Crim.App.1987) (quoting Ex parte Floyd, 457 So.2d 961, 962 (Ala.1984)). See also Thomas, 908 So.2d at 310.
“[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.’’ Ex parte White, 792 So.2d 1097, 1098 (Ala.2001).

III. Analysis

Ward asserts (1) that the State introduced at trial a Merit brand cigarette butt found at the crime scene and testimony to the effect that Ward sometimes smoked Merit brand cigarettes; (2) that the State argued that from that evidence the jury could infer that Ward was present at the crime scene; and (3) that newly discovered forensic reports disclose that the cigarette butt introduced at trial had not in fact been handled by Ward. Ward also asserts that the cigarette butt was the only physical evidence introduced by the State allegedly linking him to the crime scene. Thus, Ward contends that the newly discovered test results conflict with the theory upon which the State asked the jury to find Ward guilty.
In order to warrant relief on a claim of newly discovered evidence, a petitioner must meet the criteria set forth in Rule 32.1(e), Ala. R.Crim. P., which provides:
“(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
“(1) The facts relied upon were not known by the petitioner or the petitioner’s counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
“(2) The facts are not merely cumulative to other facts that were known;
“(3) The facts do not merely amount to impeachment evidence;
“(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
*725 “(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received.”

The facts must be newly discovered.

Rule 32.1(e)(1) requires that the facts relied upon not have been known by the petitioner or petitioner’s counsel at the time of trial (though they must have been in existence at that time) or at the time of an earlier collateral proceeding, and that the facts could not have been discovered earlier through the exercise of reasonable diligence. Ward alleges that the test results at issue were not known by him or his defense counsel at the time of his trial and that he did not know of the existence of the test results until he obtained the second set of documents from DFS in October 2008. The State does not refute these allegations.[4]
The allegations of Ward’s Rule 32 petition also are sufficient to satisfy his pleading burden with respect to the requirement that the facts could not have been discovered earlier through the exercise of reasonable diligence. Ward alleged that the prosecutor withheld the test results from him and his counsel, and he alleged in detail the efforts required to obtain the test results from DFS. It is clear from the Rule 32 petition that Ward is alleging that neither he nor his counsel had reason to know or to suspect that any forensic tests had been performed on the cigarette butt. We conclude that Ward has sufficiently pleaded this element of Rule 32.1(e). Further, the State did not assert in its response before the circuit court that Ward had failed to sufficiently plead this element, and Ward therefore had no opportunity to respond to that objection in the circuit court.[5]
In its brief to this Court, the State contends that “[ujndoubtedly, Ward could have taken the same investigative step ... [before] he filed his first Rule 32 petition that he took in 2008 when he investigated, sought, and obtained test results relevant to the Merit cigarette butt.” This contention fails because there appears to have been no reason for Ward or his counsel to have suspected before 2008 that any such test results existed or that any investigation was warranted.
In Stamps v. State, 380 So.2d 406, 409 (Ala.Crim.App.1980), the Court of Criminal Appeals quoted with approval the following passage from Westergard v. Des Moines Ry., 243 Iowa 495, 503, 52 N.W.2d 39, 44 (1952), explaining the concept of diligence in the context of a request for a new trial based on newly discovered evidence:
“ ‘The showing of diligence required is that a reasonable effort was made. The applicant is not called upon to prove he sought evidence where he had no reason to apprehend any existed. He must exhaust the probable sources of information concerning his case; he must use that of which he knows, and he must follow all clues which would fairly advise *726 a diligent man that something bearing on his litigation might be discovered or developed. But he is not placed under the burden of interviewing persons or seeking in places where there is no indication of any helpful evidence.’ ”
(Emphasis added.) Compare Ex parte Burgess, 21 So.3d 746 (Ala.2008); Ex parte Robinson, 565 So.2d 664, 668 (Ala.1990).
Likewise, we cannot say at the pleading stage that Ward or his counsel should have suspected at trial or when he filed his first Rule 32 petition that any additional forensic test results existed or that further investigation would be anything more than a mere fishing expedition. There is no reason for a defendant to assume that forensic tests were performed on every item of evidence introduced at trial or that the prosecutor made a misleading jury argument that was contradicted by undisclosed evidence in the State’s possession. Further, Ward’s alleged difficulties in obtaining the information from DFS in 2008 (including DFS’s initial denial that any investigative report on Little’s death existed) imply that the test results were not reasonably discoverable at an earlier time, regardless of whether they might have been theoretically “available” to him or his counsel.[6]
We cannot conclude that, as a matter of law, the forensic test results could have been discovered earlier with the exercise of reasonable diligence. On remand, Ward is entitled to an opportunity to prove his allegations.

The facts are not merely cumulative to other facts that were known.

The State argues in its brief to this Court that the cigarette-butt evidence is cumulative to other evidence introduced at trial concerning hairs found in Little’s automobile that did not match the sample of Ward’s hair. We disagree. The cigarette-butt evidence differs materially from the hair evidence because the cigarette-butt evidence was not merely negative evidence. Instead, Ward alleges that the State used the cigarette butt to create an inference that Ward was present at the crime scene. If Ward’s allegations are true, the test results excluding Ward as the source of the cigarette butt would have negated the inference from the cigarette-butt evidence that Ward was at the crime scene. Thus, we cannot conclude that the forensic test results excluding Ward as the source of the cigarette butt are merely cumulative.

The facts do not merely amount to impeachment evidence.

The newly discovered forensic evidence is not merely impeachment evidence; rather, it serves to controvert what appears from the record to be the only physical evidence linking Ward to the crime scene. The Court of Criminal Appeals in Farris v. State, 890 So.2d 188 (Ala.Crim.App.2003), determined that evidence analogous to the cigarette-butt evidence in the present case was not merely impeachment evidence because that evidence directly contradicted testimony central to the prosecution’s case. The Court of Criminal Appeals stated:
“ ‘Black’s Law Dictionary 755 (7th ed.1999) defines “impeach” as “[t]o discredit the veracity of (a witness).” The evidence is not impeaching in that Banks did not seek to discredit the veracity of any witnesses. Rather, the results of the [medical test] served to controvert, *727 that is, disputed the State’s witnesses’s findings and opinions, not their credibility.’”
890 So.2d at 192 (quoting Banks v. State, 845 So.2d 9, (Ala.Crim.App.2002)). See also Rule 607, Ala. R. Evid. (“Who May Impeach”; “The credibility of a witness may be attacked by any party....”).
Likewise, this Court has noted that “[w]here the newly discovered evidence ‘tends to destroy or obliterate the effect of the evidence upon which the verdict rested it is more than impeaching for ... its tendency would be to defeat the verdict returned.’ ” Register Propane Gas Co. v. Whatley, 688 So.2d 225, 229 (Ala.1996) (first emphasis added) (quoting Reynolds v. City of Birmingham, 29 Ala.App. 505, 507, 198 So. 360, 362 (1940)). See also Ex parte Robinson, 565 So.2d 664, 668 (Ala.1990) (newly discovered “pistol permit issued to the deceased tended to negate the inference that Robinson had greater access to, and greater control of, the murder weapon”). The evidence at issue here is not impeaching, but tends, if proven, to “destroy or obliterate” key physical evidence upon which the State relied.

Different result and actual innocence.

The Court of Criminal Appeals in its unpublished memorandum cited Payne v. State, 791 So.2d 383, 398 (Ala.Crim.App.2000), for the general proposition that “because of the conjunctive ‘and’ between [Rule 32.1(e) ](4) and (5), [a defendant] must meet all five prerequisites of Rule 32.1(e) in order to prevail” on a claim of newly discovered evidence. Rule 32.1(e)(4) requires that “[i]f the facts had been known at the time of trial or of sentencing, the result probably would have been different”; Rule 32.1(e)(5) requires that “[t]he facts establish that petitioner is innocent of the crime for which petitioner was convicted.... ”
The Court of Criminal Appeals concluded that the cigarette-butt evidence did not establish that Ward was innocent of the murder. That reasoning would place an almost impossible burden on a criminal defendant to show that any single item of evidence would, by itself, establish his or her innocence. A common-sense reading of Rule 32.1(e) is one that requires a showing that the newly discovered facts go to the issue of the defendant’s actual innocence (as opposed to a procedural violation not directly bearing on guilt or innocence). Otherwise, the requirement of Rule 32.1(e)(4) — a showing that “the result probably would have been different”— would add nothing to the formula for relief created by Rule 32.1(e); Rule 32.1(e)(4) would be rendered meaningless in the face of the greater requirement imputed to Rule 32.1(e)(5) that the newly discovered facts “establish” the defendant’s innocence.
When construing rules, this Court has applied the rules of construction applicable to statutes. Ex parte State ex rel. Daw, 786 So.2d 1134, 1137 (Ala.2000). Regarding statutory construction, this Court has said:
“ ‘It must be presumed,’ however, that statutes are enacted with a ‘meaningful purpose.’ Adams v. Mathis, 350 So.2d 381, 385-86 (Ala.1977). ‘The Legislature will not be presumed to have done a futile thing in enacting a statute.’ Ex parte Watley, 708 So.2d 890, 892 (Ala.1997). See also Ex parte Robinson, 361 So.2d 1113, 1114 (Ala.1978). ‘ “There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.” ’ Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.), cert. denied, 708 So.2d 911 (Ala.1997); McDonald v. State, 32 Ala.App. 606, 609, 28 So.2d 805, 807 *728 (1947) (‘A legislature will not be presumed to use language without any-meaning or application.... ’).”
Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000). See also Ex parte State ex rel. Daw, 786 So.2d at 1136, 1137 (stating that “rules and statutes relating to the same subject matter must be read in pari materia, thus allowing for legal harmony where possible,” and that, “[i]n construing rules of court, this Court has applied the rules of construction applicable to statutes”); Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378 (Ala.1979) (observing that parts of a statute dealing with the same subject matter should be construed in pan materia).
Clearly, the newly discovered facts at issue here relate not to some procedural violation, but to Ward’s actual guilt or innocence. As to the requirement in Rule 32.1(e)(4) that the result probably would have been different had the newly discovered evidence been presented to the jury, this calculation must be made based on the probative value of the newly discovered evidence and its relationship to the other evidence presented to the jury. See Ex parte Frazier, 562 So.2d 560, 571 (Ala.1989) (“[I]f the jury had been afforded the opportunity to consider this new information [about the true extent of a key prosecution witness’s role in the crime] in conjunction with all of the other evidence introduced at trial, it would have reached a different result.” (footnote omitted)).
The results of the forensic tests performed on the cigarette butt are of substantial probative value in relation to the other evidence bearing on the question of Ward’s guilt or innocence. The evidence against Ward was largely circumstantial; the only physical evidence in the record tying Ward to the crime scene was the cigarette butt. Moreover, the State’s theory of the case depended in material measure on its argument to the jury that the cigarette butt proved that Ward was present at the crime scene. If, as Ward has alleged, the newly discovered forensic test results contradict this theory, a material part of the State’s evidence against Ward would be “destroy[ed] or obliterate[d].” Register Propane Gas Co., 688 So.2d at 229.
In considering a claim that a criminal conviction should be vacated because of newly discovered material facts, a court must balance the principles of fundamental fairness against the finality of judgments. As then Judge Shaw noted in his concurring opinion in Dowdell v. State, 854 So.2d 1195, 1198 (Ala.Crim.App.2002):
“ ‘A criminal trial is not a lottery, a spin of the roulette wheel or a throw of the dice. The orderly processing of cases through the court is an important value, but it is not the end in itself. It is only the method by which we attempt to achieve the ultimate purpose of the criminal justice system — the fair conviction of the guilty and the protection of the innocent. That is what our constitutional guarantees are all about. Our system fails every time an innocent person is convicted, no matter how meticulously the procedural requirements governing criminal trials are followed.’
“ ‘Consistent with society’s “overriding concern with the justice of the finding of guilt,” the courts, as well as the prosecution, must be vigilant to correct a mistake.’ ”
854 So.2d at 1198 (Shaw, J., concurring in the result) (citations omitted).
In Ex paHe Frazier, supra, this Court relaxed the requirements for obtaining a new trial where perjured testimony had *729 been used to obtain a conviction. This Court, quoting Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), noted:
“‘Court proceedings are held for the solemn purpose of endeavoring to ascertain the truth which is the sine qua non of a fair trial. Over the centuries Anglo-American courts have devised careful safeguards by rule and otherwise to protect and facilitate the performance of this high function.’”
562 So.2d at 565.
If the prosecutor withheld from Ward’s defense counsel exculpatory evidence or knowingly made arguments that were contradicted by evidence in the prosecutor’s files, that conduct would bolster Ward’s claim for relief. “While [a prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.” Berger v. United States, 295 U.S. 78, 87, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

TV. Conclusion

We conclude that Ward has sufficiently pleaded a claim of newly discovered material facts and that he is entitled to an opportunity to prove his allegations.
We reverse the judgment of the Court of Criminal Appeals and remand the cause to that court for it to in turn remand it to the circuit court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, and SHAW, JJ., concur.
MAIN and WISE, JJ., recuse themselves.*

. “Serology” is “the branch of medicine and biology that deals with blood serum, etc., esp. the immune responses induced in it by pathogens and other aritigens.” "Serological” means "pertaining to, detectable ■ or distinguishable by a specific serum immune response.” Shorter Oxford English Dictionary 2765 (5th ed.2003).

. In addition to the claim relating to the cigarette butt, Ward's Rule 32 petition raised newly-discovered-material-fact claims relating to the cause of Little's death and to forensic tests on hairs and other items; we denied certiorari review as to those claims.

.The State did respond with respect to forensic reports on hairs found at the scene, but it did not specifically address, or even refer to, the cigarette butt.

. Rule 32.2(c) requires that a Rule 32 petition asserting a claim based on newly discovered material facts (Rule 32.1(e)) must be filed within the applicable one-year period under Rule 32.2(c) or within six months after the discovery of the newly discovered material facts, whichever is later. In this case. Ward filed his amended Rule 32 petition asserting this claim within six months after he received the allegedly relevant test results from DFS.

. In the circuit court, the State responded to Ward's allegations with counter-allegations (1) asserting generally that "all of the forensic test results were available” to Ward and his counsel before trial and (2) asserting that "the 'facts' alleged were either known ... or could have been known by the exercise of reasonable diligence."

. The State contends in its brief to this Court that, ”[a]ccording to the prosecutor, Ward’s counsel had access to this forensic report; more than likely he did not consider it to be material to Ward's defense.” This assertion was not presented to the circuit court, and it goes to whether Ward can prove his claim, not to the sufficiency of his pleadings.