PER CURIAM.
Walter Leroy Moody, Jr., appeals the circuit court’s summary dismissal of his petition for postconviction-relief, filed pursuant to Rule 32, Ala. R.Crim. P.
In 1996, after a jury trial in which he represented himself, Moody was convicted of two counts of capital murder for the 1989 pipe-bomb murder of Judge Robert S. Vance of the United States Court of Appeals for the Eleventh Circuit. The murder was made capital (1) because it was committed by means of explosives or explosion, see § 13A-5-40(a)(9), Ala.Code 1975, and (2) because Judge Vance was a public official and the murder stemmed from, was caused by, or was related to Judge Vance’s official position, act, or capacity, see § 13A-5-40(a)(ll), Ala.Code 1975. Moody was also convicted of assault in the first degree, see § 13A-6-20(a)(l), Ala.Code 1975, for injuries sustained by Judge Vance’s wife, Helen Vance, in the bomb blast. By a vote of 11-1, the jury recommended that Moody be sentenced to death for his capital-murder convictions, and the trial court followed the jury’s recommendation and sentenced Moody to death. The trial court also sentenced Moody to' life imprisonment for the assault conviction. -
This Court affirmed Moody’s convictions and sentences on appeal.[1] Moody v. State, 888 So.2d 532 (Ala.Crim.App.2003). The facts of the crime are fully set out in that opinion. The Alabama Supreme Court denied certiorari review, Ex parte Moody, 888 So.2d 605 (Ala.2004), and this Court issued a certificate of judgment on March 26, 2004. The United States Supreme Court subsequently denied certiorari review on November 1, 2004. Moody v. Alabama, 543 U.S. 964, 125 S.Ct. 442, 160 L.Ed.2d 331 (2004).
*833 Moody timely filed his Rule 32 petition on March 23, 2005,[2] raising numerous claims, including several claims of ineffective assistance of counsel. The circuit court appointed counsel to represent Moody, who had apparently filed his petition pro se, and counsel filed an amended petition on March 2, 2006, which incorporated by reference all the claims raised in Moody’s original petition and raised one additional claim. The State filed an answer to Moody’s petition and amended petition on July 3, 2006, and a motion for summary dismissal on July 12, 2006. On May 8, 2007, counsel moved to withdraw from representing Moody. The circuit court granted the motion in August 2008, and on September 4, 2008, the court appointed new counsel to represent Moody. On July 20, 2009, Moody’s new counsel filed a response to the State’s motion for summary dismissal, and a second amended petition,[3] which incorporated by reference all the claims raised in Moody’s original petition and amended petition, expanded on some of those claims, and raised additional claims. On August 17, 2009, the State filed an answer and motion for summary dismissal of Moody’s second amended petition. The circuit court issued an extensive order summarily dismissing Moody’s petition and amended petitions on December 28, 2009. This appeal followed.

Standard of Review

“ ‘[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.’ Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). ‘However, where there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, “[t]he standard of review on appeal ... is whether the trial judge abused his discretion when he denied the petition.” ’ Boyd v. State, 913 So.2d 1113, 1122 (Ala. Crim.App.2003) (quoting Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App. 1992)). ‘On direct appeal we reviewed the record for plain error; however, the plain-error standard of review does not apply to a Rule 32 proceeding attacking a death sentence.’ Ferguson v. State, 13 So.3d 418, 424 (Ala.Crim.App.2008).
“Moreover, ‘there exists a long-standing and well-reasoned principle that we may affirm the denial of a Rule 32 petition if the denial is correct for any reason.’ McNabb v. State, 991 So.2d 313, 333 (Ala.Crim.App.2007). That general rule is limited only by due-process constraints that ‘require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense might, if available for consideration, suffice to affirm a judgment.’ Liberty Nat’l Life Ins. Co. v. University of Alabama Health Seros. Found., P.C., 881 So.2d 1013, 1020 (Ala. 2003). In the context of Rule 32 proceedings, ‘the language of Rule 32.3 [placing the burden on the State to plead any ground of preclusion in Rule 32.2] ... has created the narrow due-process constraint discussed in Liberty National,’ McNabb, 991 So.2d at 334, by *834 making the preclusions in Rule 32.2 affirmative defenses and prohibiting this Court from sua sponte applying those preclusions for the first time on appeal. See Ex parte Clemms, 55 So.3d 348 (Ala.2007). Thus, although the preclu-sions in Rule 32.2 ‘ “apply with equal force to all cases, including those in which the death penalty has been imposed,”’ Nicks v. State, 783 So.2d 895, 901 (Ala.Crim.App.1999) (quoting State v. Tarver, 629 So.2d 14, 19 (Ala.Crim. App.1993)), only if those affirmative defenses are asserted by the State or found by the circuit court may this Court apply them on appeal.”
Bryant v. State, [Ms. CR-08-0405, February 4, 2011] — So.3d -, - (Ala. Crim.App.2011).
Additionally, Rule 32.7(d), Ala. R.Crim. P., authorizes a circuit court to summarily dismiss a Rule 32 petition
“[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings ...”
I.
Moody first contends on appeal that the circuit court erred in summarily dismissing his claims of ineffective assistance of counsel. He argues that his ineffective-assistance claims regarding pretrial counsel, L. Dan Turberville and Richard S. Jaffe, were not subject to the preclusions in Rule 32.2(a) and were pleaded with sufficient specificity to entitle him to an evidentiary hearing. He also argues that his ineffective-assistance claims regarding appellate counsel, Bruce A. Gardner, were sufficiently pleaded to entitle him to an evidentiary hearing.
“[W]hen reviewing a petitioner’s claims of ineffective assistance of counsel, we apply the standard articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must establish: (1) that counsel’s performance was deficient; and (2) that the petitioner was prejudiced by counsel’s deficient performance.
“ ‘First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.’
“Strickland, 466 U.S. at 687.
“ ‘To meet the first prong of the test, the petitioner must show that his counsel’s representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel’s assistance was reasonable, considering all the circumstances.’ Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987). ‘ “This court must avoid using ‘hindsight’ to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance.” ’ Lawhom v. State, 756 So.2d 971, 979 (Ala.Crim.App. 1999) (quoting Hallford v. State, 629 So.2d 6, 9 (Ala.Crim.App.1992)). ‘A *835 court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.’ Strickland, 466 U.S. at 689.
‘“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 138-84 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” See Michel v. Louisiana, [350 U.S. 91], at 101 [ (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.’
“Strickland, 466 U.S. at 689.
“ ‘[T]he purpose of ineffectiveness review is not to grade counsel’s performance. See Strickland v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992) (“We are not interested in grading lawyers’ performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.”). We recognize that “Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.” Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every ease, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or “what is prudent or appropriate, but only what is constitutionally compelled.” Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).’
“Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (footnotes omitted).
“To establish the second prong of the test, ‘[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ Strickland, 466 U.S. at 694. ‘A reasonable probability is a probability sufficient to undermine confidence in the outcome.’ Id. ‘It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.’ Id. at 693. “When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evi *836 dence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.’ Id. at 695.”
Bryant v. State, [Ms. CR-08-0405, February 4, 2011] — So.3d -, - (Ala. Crim.App.2011).
“The standards for determining whether appellate counsel was ineffective are the same as those for determining whether trial counsel was ineffective.” Jones v. State, 816 So.2d 1067, 1071 (Ala. Crim.App.2000), overruled on other grounds by Brown v. State, 903 So.2d 159 (Ala.Crim.App.2004). “The process of evaluating a case and selecting those issues on which the appellant is most likely to prevail has been described as the hallmark of effective appellate advocacy.” Hamm v. State, 913 So.2d 460, 491 (Ala. Crim.App.2002). As this Court explained in Thomas v. State, 766 So.2d 860 (Ala. Crim.App.1998), affd, 766 So.2d 975 (Ala. 2000), overruled on other grounds by Ex parte Taylor, 10 So.3d 1075 (Ala.2005):
“As to claims of ineffective appellate counsel, an appellant has a clear right to effective assistance of counsel on first appeal. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, appellate counsel has no constitutional obligation to raise every non-frivolous issue. Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The United States Supreme Court has recognized that ‘[experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.’ Jones v. Barnes, 463 U.S. at 751-52, 103 S.Ct. 3308. Such a winnowing process ‘far from being evidence of incompetence, is the hallmark of effective advocacy.’ Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Appellate counsel is presumed to exercise sound strategy in the selection of issues most likely to afford relief on appeal. Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993), cert. denied, 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993). One claiming ineffective appellate counsel must show prejudice, i.e., the reasonable probability that, but for counsel’s errors, the petitioner would have prevailed on appeal. Miller v. Keeney, 882 F.2d 1428, 1434 and n. 9 (9th Cir.1989).”
766 So.2d at 876.
Rule 32.3, Ala. R.Crim. R, states that “[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.” Rule 32.6(b), Ala. R.Crim. P., states that “[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.” As this Court noted in Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003):
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitle[s] a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, *837 Ala. R.Crim. P., to present evidence proving those alleged facts.”
913 So.2d at 1125.
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
Hyde v. State, 950 So.2d 344, 356 (Ala. Crim.App.2006).
With these principles in mind, we turn to Moody’s claims.
A.
In his petition and amended petitions, Moody asserted that pretrial counsel Turberville and Jaffe were ineffective because, he said:
(1) They did not move for a change of venue;
(2) They did not file a motion for a “life-qualified” jury;
(3) They did not adequately investigate the facts of the crime;
(4) They did not adequately investigate Moody’s prior bad acts to support their pretrial motions to suppress the admission of those acts;
(5) They did not adequately investigate Moody’s background to obtain mitigation evidence;
(6) They did not adequately investigate Moody’s background in order to ascertain his “paranoid personality disorder,” which resulted in. their withdrawing from their representation of Moody and leaving Moody to represent himself at trial; and
(7) They violated Rule 1.8, Ala. R. Prof. Cond., by accepting compensation from a fund set up by the Alabama Attorney General’s Office in excess of the compensation permitted by law.[4]
In its answers and motions for summary dismissal, the State argued that these claims were precluded by Rules 32.2(a)(3) and (a)(5), because they could have been, but were not, raised and addressed at trial *838 and then on appeal. The State also argued that claims (1) through (5), as set out above, were insufficiently pleaded and that claim (6), as set out above, was meritless on its face and, thus, failed to state a claim upon which relief could be granted. In its order, the circuit court likewise found that all of these claims were precluded by Rules 32.2(a)(3) and (a)(5), because they could have been, but were not, raised and addressed at trial and on appeal, that claims (1) through (5) were also insufficiently pleaded, and that claim (6) also failed to state a claim upon which relief could be granted.
We agree with the circuit court that Moody’s claims of ineffective assistance of pretrial counsel were precluded by Rules 32.2(a)(3) and (a)(5), because they could have been, but were not, raised and addressed at trial and on appeal. In Wilkerson v. State, 70 So.3d 442 (Ala.Crim.App. 2011), this Court found similar claims of ineffective assistance of pretrial counsel to be subject to the preclusions in Rules 32.2(a)(3) and (a)(5), explaining:
“Initially, we note that, although not found by the circuit court, the State correctly argued in its response to the petition, and correctly argues on appeal, that this claim was barred by Rule 32.2(a)(3) and (a)(5), because it could have been, but was not, raised and addressed at trial and on appeal. Although generally claims of ineffective assistance of counsel may be raised for the first time in a Rule 32 petition, see, e.g., Johnson v. State, 989 So.2d 1165 (Ala.Crim.App.2007), this is not a typical claim of ineffective assistance of counsel. The claim raised here is a claim of ineffective assistance of pretrial counsel, who represented Wilkerson for only four months after his arrest. As noted above, Wilkerson’s trial counsel ... began representing Wilkerson in January 2003, some 22 months before Wilkerson’s trial and sentencing in November 2004, and could have easily raised a challenge to [pretrial counsel’s] effectiveness at any time during those 22 months, during the trial, or even in the postjudgment motion for a new trial. Only when a claim of ineffective assistance of counsel ‘cannot reasonably be presented in a new trial motion’ may that claim be presented for the first time in a Rule 32 petition. Ex parte Ingram, 675 So.2d 863, 866 (Ala.1996). See also Rule 32.2(d) (‘Any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable.’).”
70 So.3d at 452.
In Ex parte Harris, 947 So.2d 1139 (Ala. 2005), the Alabama Supreme Court also held that a claim regarding pretrial counsel’s effectiveness was precluded by Rule 32.2(a)(3), because it could have been, but was not, raised and addressed at trial. In that case, Harris, who had been convicted of capital murder and sentenced to death, alleged in her Rule 32 petition that she had been denied the effective assistance of counsel because she had been represented by nine different attorneys before trial and, thus, pretrial counsel “failed to maintain continuity of representation.” Ex parte Harris, 947 So.2d at 1149. The Supreme Court, noting that Harris had been represented at trial by two attorneys, one of whom had been appointed nine months before trial and the other three months before trial, held that because Harris’s trial counsel “had at least nine months in which to consider whether the fact that Harris had been represented by so many different pretrial attorneys amounted to ineffective assistance,” her claim was “procedurally barred because it could have been, but was not, raised at trial.” Id.
*839 Similarly, here, Moody had over two years to consider whether he believed Tur-berville and Jaffe had been ineffective during their pretrial representation of him.[5] Turberville and Jaffe began representing Moody in February 1992, and were permitted to withdraw in August 1994. Moody began representing himself at that time and continued to represent himself through his October 1996 trial. Moody could have easily raised a challenge to Turberville’s and Jaffe’s effectiveness at any time during those two years, during the trial, or in a postjudgment motion for a new trial, but he failed to do so.
We note that Moody argues that both Ex parte Harris and Wilkerson are distinguishable from his case because, unlike the defendants Harris and Wilkerson, he was not represented by counsel at trial. He maintains that he should be treated differently than other criminal defendants because he represented himself after his pretrial counsel withdrew and that to “require pro se litigants to also litigate at trial the issue of pretrial counsel’s effectiveness ... would constitute an unsurmountable obstacle for pro se criminal defendants.” (Moody’s brief, at 11.) However, “[t]he right of self-representation does not exempt a party from compliance with the relevant rules of procedural law.” Hill v. State, 571 So.2d 1297, 1299 (Ala.Crim.App.1990). See also Lockett v. City of Montgomery, 677 So.2d 799 (Ala. Crim.App.1995).
“The right of self-representation does not excuse a defendant from complying with the relevant rules of procedure and substantive law. Faretta v. California [, 422 U.S. 806 (1975)]; Justus v. Commonwealth, 222 Ya. 667, 288 S.E.2d 905 (1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1491, 71 L.Ed.2d 693 (1982). The ‘rules of evidence, procedure, and substantive law will be applied the same to all parties in a criminal trial whether that party is represented by counsel or acting pro se.’ Williams v. State, 549 S.W.2d 183,187 (Tex.Cr.App.1977).”
Bush v. State, 695 So.2d 70,107 (Ala.Crim. App.1995), affd, 695 So.2d 138 (Ala.1997). As this Court explained in DeFries v. State, 597 So.2d 742 (Ala.Crim.App.1992):
“ ‘When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.’ Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). ‘Although a defendant may not be penalized for exercising his constitutional right to represent himself, Faretta v. California, [citation omitted [in De-Fries ]], “neither is he entitled to special treatment or benefits not afforded to defendants with counsel.” ’ State v. Smith, 66 Or.App. 374, 377, 675 P.2d 1060, 1063, review denied, 297 Or. 339, 683 P.2d 1370 (1984) (quoting State v. Addicks, 34 Or.App. 557, 560, 579 P.2d 289, 290, review denied, 284 Or. 80a, (1978)). Cf. Zeigler v. State, 432 So.2d 542 (Ala.Cr.App.1983) (pro se defendant generally not entitled to special consideration on appeal).
“In Owen v. State, 272 Ind. 122, 396 N.E.2d 376 (1979), the Indiana Supreme Court observed the following:
“ ‘The trial judge may appoint or authorize the hiring of experts or lay investigators if, in his discretion, he thinks it necessary under the circumstances. We would disturb his judg *840 ment only if there was shown to be abuse of that discretion. Here, appellant chose to proceed pro se and so took upon himself responsibilities that an attorney would have had in representing him and voluntarily relinquished some aid that may have been available to him through an attorney.’
“Owen v. State, 272 Ind. at 127-28, 396 N.E.2d at 380-81. In a later case, the same court noted:
“ ‘ “[0]f course a defendant may represent himself if he so desires. In such situation he must accept the burdens and hazards incident to his position.” ... One of the “burdens and hazards” appellant took on by rejecting the offer to have counsel appointed for him was that of doing without the ... services an appointed attorney could have provided for him. We will not hear him now complain of these burdens and hazards he could have easily avoided.’
“Yager v. State, 437 N.E.2d 454, 458 (Ind.1982) (quoting Blanton v. State, 229 Ind. 701, 703, 98 N.E.2d 186, 187 (1951)).”
597 So.2d at 745 (emphasis added). See also Ex parte Moody, 684 So.2d 114 (Ala.1996).
This Court held on direct appeal that Moody had knowingly and voluntarily waived his right to counsel and chose to represent himself. Moody v. State, 888 So.2d at 554-56. By doing so, Moody accepted the “burdens and hazards” of self-representation and he cannot now complain that the burden of self-representation created an “insurmountable obstacle” when he could have easily avoided that obstacle. Indeed, as explained in our opinion on direct appeal, the trial court gave Moody numerous opportunities during the two years before his trial to have counsel appointed to represent him, or at the very least, to have standby counsel appointed, and Moody repeatedly and steadfastly refused. He is not entitled to special treatment merely because he voluntarily chose to forgo his right to counsel and to represent himself.
Moody also argues that his case is distinguishable from Wilkerson because, he says, Turberville and Jaffe represented him for over two years, during which time they conducted an investigation for purposes of both the guilt and penalty phases of the trial, while, according to Moody, pretrial counsel in Wilkerson represented Wilkerson for only four months solely for the purpose of plea negotiations. He maintains that to require him to have challenged at trial Turberville’s and Jaffe’s effectiveness would have “risked exposing critical, privileged matters related to [his] defense and penalty phase strategies” (Moody’s reply brief, at 3), while in Wilkerson, “litigation of pretrial counsel’s representation of the defendant during completed plea negotiations with the prosecution would not have risked divulging sensitive matters of ... counsel’s trial preparation.” (Moody’s reply brief, at 4.)
This argument is unpersuasive for two reasons. First, Moody’s assertions regarding the facts in Wilkerson are mistaken. Pretrial counsel in Wilkerson was not hired, as Moody contends, for the sole purpose of plea negotiations. Rather, pretrial counsel was hired immediately after Wilkerson’s arrest for the purpose of representing Wilkerson against the charges levied against him in the best way possible, regardless of the outcome. It was subsequent trial counsel, not pretrial counsel, who was hired — after pretrial counsel had withdrawn — to represent Wilkerson for the sole purpose of entering a guilty plea. Second, in Wilkerson, this Court did not hold, as Moody apparently believes, that a *841 claim of ineffective assistance of pretrial counsel, must be raised before trial, but held only that a claim of ineffective assistance of pretrial counsel must be raised as soon as practicable, whether that be before trial, during trial, or in a postjudgment motion for a new trial.
We recognize that a defendant “who raises a Sixth Amendment claim of ineffective assistance of counsel ‘waives the attorney-client privilege as to matters reasonably related to the claim of inadequate representation.’ ” State v. Click, 768 So.2d 417, 421 (Ala.Crim.App.1999) (quoting United States v. Mansfield, 38 M.J. 972, 984 (A.F.C.M.R.1991), affd, 38 M.J. 415 (C.M.A.1993)). Thus, it may not be reasonable to raise some claims of ineffective assistance of pretrial counsel before or during trial because to do so would, as Moody correctly asserts, risk revealing privileged trial strategies. Cf., Ex parte Moody, 684 So.2d 114 (Ala.1996) (noting importance of criminal defendant’s right not to disclose information to the State regarding strategy before trial). In such a situation, however, it would still be reasonable to raise those claims in a post-judgment motion for a new trial at which point the risk of revealing privileged trial strategies would no longer exist.
In this case, it is clear that claims (1), (2), and (7), as set out above, could have been raised before or during trial without risk of revealing privileged trial strategies. Those claims do not involve pretrial counsel’s investigation or otherwise implicate trial strategy; they are straightforward claims regarding pretrial motions and attorney compensation. Claims (3), (4), (5), and (6), as set out above, all involve pretrial counsel’s investigation (or alleged lack thereof), and, thus, raising these claims before or during trial may have risked revealing trial strategy. However, these claims could have been raised in a postjudgment motion for a new trial. Indeed, the record from Moody’s direct appeal reflects that Moody filed a timely pro se postjudgment motion pursuant to Ex parte Jackson, 598 So.2d 895 (Ala.1992), overruled by Ex parte Ingram, 675 So.2d 863 (Ala.1996), to extend the time for filing a motion for a new trial until a trial transcript could be prepared.[6] A trial transcript, however, would not have been necessary for Moody to challenge the performance of pretrial counsel in their pretrial investigation, an investigation that occurred over two years before the trial. If Moody was able to file a timely Ex parte Jackson motion, he could have likewise filed a timely motion for a new trial challenging his pretrial counsel’s effectiveness and could have fully litigated those claims posttrial and then raised them on appeal.
Finally, Moody argues that applying the preclusions in Rules 32.2(a)(3) and (a)(5) to his claims of ineffective assistance of pretrial counsel conflicts with established caselaw from both the Alabama Supreme Court and the United States Supreme Court, specifically Ex parte Ingram, supra, and Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). We disagree.
Contrary to Moody’s contention, application of Rules 32.2(a)(3) and (a)(5) to his claims of ineffective assistance of pretrial counsel is supported by, not in conflict with, the Alabama Supreme Court’s opinion in Ex parte Ingram. In Ex parte Ingram, the Alabama Supreme Court overruled its opinion in Ex parte Jackson, to the extent that it allowed the time for *842 filing a motion for a new trial under Rule 24, Ala. R.Crim. P., to be extended. In doing so, the Court noted that the purpose behind the Ex parte Jackson procedure was to facilitate the review of claims of ineffective assistance of trial counsel on direct appeal by providing defendants with the ability to fully litigate those claims in a motion for a new trial. Although the purpose was “noble,” the procedure itself proved to be unworkable, and the Alabama Supreme Court abolished the procedure, holding instead that “[w]hen a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the SO days allowed by Rule 21.1(b), Ala. R.Crim. P., the proper method for presenting that claim for appellate review is to file a Rule 82, Ala. R.Crim. P., petition for post-conviction relief.” Ex parte Ingram, 675 So.2d at 865-66 (emphasis added). The Court did not hold, as Moody contends, that claims of ineffective assistance of trial counsel may always be raised for the first time in a Rule 32 petition. Rather, as this Court explained in Wilkerson, supra, Ex parte Ingram and its progeny make clear that “[o]nly when a claim of ineffective assistance of counsel ‘cannot reasonably be presented in a new trial motion’ may that claim be presented for the first time in a Rule 32 petition.” Wilkerson, 70 So.3d at 452 (quoting Ex parte Ingram, 675 So.2d at 866). Here, Moody’s claims could have reasonably been raised in a motion for a new trial.
Likewise, applying Rules 32.2(a)(3) and (a)(5) to Moody’s claims of ineffective assistance of pretrial counsel does not conflict with the United States Supreme Court’s opinion in Massaro. In Massaro, the United States Supreme Court held that claims of ineffective assistance of trial counsel are excepted from the general procedural-default rule that claims in a post-conviction petition for a writ of habeas corpus under 28 U.S.C. § 2255 are defaulted if they could have been raised on direct appeal. The Court was clear to point out, however, that the procedural-default rule, and thus the exception the Court created to that rule, is “neither a statutory nor a constitutional requirement,” but a federal “doctrine adhered to by courts to conserve judicial resources.” 538 U.S. at 504. Because the Massaro decision was not grounded in constitutional principles, it is not binding on the states. See, e.g., Showers v. State, 407 So.2d 169, 170-71 (Ala.1981) (“If constitutionally required, the rule must be adhered to; however, a rule of procedure to be followed by federal courts is not necessarily binding on this Court.”). See also State v. Marshall, 269 Neb. 56, 690 N.W.2d 593 (2005); Torres v. State, 688 N.W.2d 569 (Minn.2004); and Spom v. State, 139 P.3d 953 (Okla.Crim. App.2006) (all holding that Massaro is not binding on state courts).
Moreover, even if Massaro were binding on this Court and applicable to Rule 32, the principle underpinning the holding in Massaro is that claims of ineffective assistance of counsel should be raised in the forum best suited to examine such fact-specific claims, i.e., the trial court. The Court noted the particular difficulty facing appellate courts trying to address claims of ineffective assistance of trial counsel raised for the first time on direct appeal:
“When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under Strickland v. Washington, 466 U.S. 668 (1984), a defendant claiming ineffective counsel must show that counsel’s actions were not supported by a reasonable strategy *843 and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the Strickland analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel’s alternatives were even worse. See Granan [v. United States, 6 F.3d 468,] 473 [ (7th Cir.1993) ] (Easter-brook, J., concurring) (‘No matter how odd or deficient trial counsel’s performance may seem, that lawyer may have had a reason for acting as he did.... Or it may turn out that counsel’s overall performance was sufficient despite a glaring omission ...’). The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them. And evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced. See, e.g., Billy-Eko [v. United States, 8 F.3d 111], 114 [ (2d Cir.1993) ]. Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.”
538 U.S. at 504-05.
Here, however, we do not hold that Moody could have, or should have, raised his claims of ineffective assistance of pretrial counsel for the first time on direct appeal. Rather, we hold only that Moody could have raised and fully litigated his claims of ineffective assistance of pretrial counsel in the correct forum, i.e., the trial court, by raising them before trial, during trial, or in a postjudgment motion for a new trial, and then, after being fully litigated in the trial court, those claims could have been pursued on direct appeal.
For the foregoing reasons, the circuit court correctly found that all of Moody’s claims regarding pretrial counsel’s effectiveness are precluded by Rules 32.2(a)(3) and (a)(5), because they could have been, but were not, raised and addressed at trial and then on appeal.[7] Therefore, summary dismissal of those claims was proper.
B.
In his petition and amended petitions, Moody also asserted that appellate counsel Gardner was ineffective for not raising on appeal the following claims:
(1) That the trial court erred in not sua sponte changing the venue of his trial;
(2) That voir dire was inadequate and resulted in the seating of jurors who were “pro-death penalty” and had “media-induced bias”;
(3) That the prosecutor engaged in misconduct by allegedly:
(a) arguing during the guilt-phase closing arguments that Moody was a member of the Ku Klux Klan when that fact was not established by the evidence;
(b) commenting during the guilt-phase closing arguments on Moody’s right not to testify;
(c) arguing victim-impact evidence during the guilt-phase closing arguments; and
*844 (d) placing pressure on the jury and asking the jury to disregard the law during both the guilt-phase and penalty-phase arguments;
(4) That the cumulative effect of the prosecutor’s alleged misconduct entitled him to relief; and
(5) That the State withheld evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).
In its answers and motions for summary dismissal, the State argued that claims (1), (2), (3)(b), (3)(c), (3)(d), and (5) were insufficiently pleaded, and that claims (3)(a) and (3)(b) were refuted by the record of Moody’s trial[8] and, thus, that no material issue of fact or law entitled Moody to relief. In its order, the circuit court found that claims (1), (2), (3)(c), (3)(d), and (5) were insufficiently pleaded, that claims (3)(a) and (3)(b) were refuted by the record of Moody’s trial and, thus, that no material issue of fact or law entitled Moody to relief, and that claim (4) was precluded by Rules 32.2(a)(3) and (a)(5) because it could have been, but was not, raised and addressed at trial and on appeal.[9]
For the reasons that follow, we conclude that the circuit court’s summary dismissal of these claims was proper.
1.
In his petition, Moody alleged:
“Appellate counsel neglected to bring to the appellate courts’ attention the trial court’s failure to change venue for this trial. Because the extensive media coverage surrounding the offenses for which I was convicted, my arrest, and trial prevented me from receiving a trial by a fair and impartial jury, appellate counsel was ineffective for failing to raise this claim as the appellate courts would have reversed my conviction. See supra ¶ 6.”
(C. 215-16.) In paragraph 6 of his petition, which Moody incorporated into this claim by reference, Moody asserted that his pretrial counsel were ineffective for not filing a motion for a change of venue. He alleged the following facts in support of that claim:
“Even though the facts surrounding this offense were the subject of extensive newspaper articles that spanned several years, my pre-trial attorneys never filed a motion to change venue. The jury pool in Jefferson County was saturated with potential jurors who had read, heard, and discussed the facts surrounding my case. Sheppard v. Maxwell, 384 U.S. 333, 362-63 (1966); Ex parte Monsanto Co., 794 So.2d 350, 354 (Ala.2001) (citation omitted). For precisely these reasons, my federal trial was moved to St. Paul, Minnesota. However, pretrial counsel in my Alabama case failed to raise and demonstrate to the court that it was impossible for me to receive a fair trial as a result of extensive pretrial publicity....”
*845 (C. 212-13.)[10]
Before a change of venue is warranted, the community must be saturated with prejudicial publicity or there must be actual prejudice against the defendant. See, e.g., Ex parte Grayson, 479 So.2d 76, 80 (Ala.1985). Here, Moody failed to allege sufficient facts indicating either community saturation or actual prejudice. He made only a bare allegation that there was “extensive media coverage” and “extensive newspaper articles that spanned several years,” and a conclusory statement that “[t]he jury pool in Jefferson County was saturated with potential jurors who had read, heard, and discussed the facts surrounding my case.” However, he pleaded no facts about the actual extent or nature of the media coverage that would indicate that it was biased or prejudicial or that it had saturated the community. In addition, he did not name a single juror who sat on his jury who had read or heard about the case. Contrary to Moody’s apparent belief, “the existence of widespread publicity does not require a change of venue.” McGahee v. State, 885 So.2d 191, 211 (AJa.Crim.App.2003). Because Moody failed to allege sufficient facts in his petition that would indicate that he would have been entitled to a change of venue, he failed to plead sufficient facts to indicate that his appellate counsel was ineffective for not raising this claim on appeal. Therefore, summary dismissal of this claim of ineffective assistance of appellate counsel was proper.
2.
Moody also alleged in his petition:
“Appellate counsel also failed to challenge the inadequate voir dire, which resulted in the seating of jurors who were unable to render a fair and impartial verdict. Members of the petit jury who had pro-death penalty views and media-induced bias should not have been seated on the jury presiding over my case. See infra Issue [X] (incorporated by reference).”[11]
(C. 216.) In Issue X of his petition, which he incorporated into this claim by reference, Moody alleged:
“Conducting voir dire without the assistance of counsel, I was unable to select a jury that could comply with the constitutional requirements necessary for passing judgment in a capital case. See Morgan v. Illinois, 504 U.S. 719, 727 (1992); Devier v. Zant, 3 F.3d 1445, 1461 (11th Cir.1993). Insufficiently trained in the law, I failed to question veniremembers in any meaningful way regarding their exposure to my case and their views on the death penalty. The trial court, having an obligation to assist untrained pro se litigants, failed to protect my rights by not adequately addressing these issues and randomly *846 striking members of the venire![12]1 As a result of the court’s failure to assist me, members of my jury were biased against me as a result of their exposure to media coverage and their preexisting views on the death penalty. The seating of these jurors violated my rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the corresponding provisions of the Alabama Constitution, and applicable state law.”
(C. 225-26.)
This claim was clearly not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). As the circuit court noted in its order, Moody failed to identify a single juror who sat on his jury who he believed was biased. Rather, he made only the bare and eonclu-sory allegation that “members of my jury were biased against me as a result of their exposure to media coverage and their preexisting views on the death penalty.” This is simply not sufficient to satisfy his burden of pleading. Because Moody failed to plead sufficient facts in his petition indicating that any juror who sat on his jury was, in fact, biased against him, he failed to plead sufficient facts to indicate that his appellate counsel was ineffective for not raising this claim on appeal. Therefore, summary dismissal of this claim of ineffective assistance of appellate counsel was proper.
3.
Moody further alleged in his petition:
“Appellate counsel failed to bring to the appellate courts’ attention numerous instances of prosecutorial misconduct that warrant a new trial. For example, during closing argument, the prosecutor argued facts that were not evidence and irrelevant to a guilt phase determination. See infra Issue [XI.]A. (incorporated by reference)![13]1
“Appellate counsel failed to raise the fact that the prosecutor also unlawfully commented on my failure to testify. See Griffin v. California, 380 U.S. 609, 614 (1965) (stating that prosecutor’s comment on defendant’s failure to testify violates his Fifth Amendment right); see also infra Issue [XI].B. (incorporated by reference).
“Appellate counsel failed to bring to the appellate courts’ attention that the prosecutor’s admission of victim impact evidence in closing argument at the guilt phase violated my right to a fair trial. See Ex parte Rieber, 663 So.2d 999, 1006 (Ala.1995); see also infra Issue [XI].C. (incorporated by reference).
“Similarly, appellate counsel failed to argue that the prosecutor inflamed the passions of the jury and improperly pressured the jury to bring back a sentence of death at the guilt and penalty phases of the trial. See Brooks v. Francis, 716 F.2d 780, 788 (11th Cir.1983); see also infra Issue [XI].D. (incorporated by reference).
“Individually and cumulatively, these instances of prosecutorial misconduct resulted in the deprivation of my rights to due process, a fair and impartial jury trial, a reliable sentencing, and my right *847 against self-incrimination guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the corresponding provisions of the Alabama Constitution, and applicable state law. Had appellate counsel raised these claims, the appellate courts would have reversed my conviction and ordered a new trial.”
(C. 216-17.)
In Issue XI.A. in his petition, which he incorporated by reference into this claim, Moody alleged the following:
“During closing arguments at the guilt phase, the prosecutor, reminding the jury of the location of each bomb sent by mail, stated:
“ ‘If you draw a line from Birmingham to Columbus to Jacksonville and you draw a line from Columbus to Savannah and you draw a line from Columbus through Atlanta, you have something that might resemble a K. And what other organization is known for hating black people and committing racial crimes than the Klan?’
“(Vol. 72, R. 436.)
“No evidence was ever introduced at trial that I was a part of the Ku Klux Klan. Because this assertion was unsupported by the evidence, its sole purpose was to inflame the passions of the jury, see Dawson v. Delaware, 503 U.S. 159 (1992), increasing the likelihood that they would return a verdict of guilty. Such irrelevant and prejudicial statements violated my rights under the Fifth,- Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the corresponding provisions of the Alabama Constitution, and applicable state law.”
(C. 226-27.) In Issue XI.B. in his petition, which Moody also incorporated by reference into this claim, Moody alleged:
“During closing arguments of my trial, the prosecutor asked the jury to consider my silence as an indication of my guilt when he stated:
“ ‘And the person who’s sitting in this courtroom today in essence with his back turned thumbing his nose reading his little book is the person that committed this crime.’
“(Vol. 72, R. 456-57.) These comments prejudiced me by preventing me from asserting my Fifth Amendment right to silence without consequence. Griffin v. California, 380 U.S. 609, 614 (1965) (stating that prosecutor’s comment on defendant’s failure to testify violates his Fifth Amendment right). These statements deprived me of my Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution, the corresponding provisions of the Alabama Constitution, and applicable state law.”
(C. 227.) In Issue XI.C. in his petition, incorporated by reference into this claim, Moody alleged:
“Where victim impact evidence has no relevance to issues presented at the guilt phase of a capital trial, the admission of such evidence constitutes reversible error. Payne v. Tennessee, 501 U.S. 808, 825 (1991); Ex parte Rieber, 663 So.2d 999, 1006 (Ala.1995). During closing argument at the guilt phase, the prosecutor stated:
“ ‘Now, Bob Vance was a human being just like you and I. He liked to work in his yard. He liked to see his grandchildren. He liked to be with his children. He and his wife were looking forward to years ahead.’
“(Vol. 72, R. 461.) Evidence of these lost relationships was irrelevant to the issues presented at the guilt phase of the trial. *848 As such, these statements warranted a mistrial or, at a minimum, the trial court should have instructed the jury to ignore these inflammatory statements. Because these comments were irrelevant and prejudicial, the jury’s consideration of them resulted in the deprivation of my Fifth, Sixth, Eighth, and Fourteenth Amendment rights as guaranteed by the United States Constitution, the corresponding provisions of the Alabama Constitution, and applicable state law.”
(C. 227-28.) Finally, in Issue XI.D. in his petition, also incorporated by reference into this claim, Moody alleged:
“At the penalty phase of my trial, the prosecutor improperly asked the jury to be the voice of the community and express the community’s will through its guilt phase verdict. See Darden v. Wainmight, 477 U.S. 168, 181 (1986); Bankhead v. State, 585 So.2d 97, 106 (Ala.Crim.App.1989). The prosecutor pressured the jury into returning a guilty verdict where he indicated that people read about bad things that happen all the time, that this jury had the opportunity to send a message, and that the jury would commit an injustice if it failed to stand up for the citizens of Jefferson County and the United States of America by coming back with a verdict other than guilty. (Vol. 72, R. 462.)
“During the penalty phase of the trial, the prosecutor reiterated this improper theme, stating:
“ ‘You have to give a message to bombers from Jefferson County we’re not going to tolerate that conduct in this county. You kill one of our neighbors with a bomb and we’re going to give you the ultimate sanction. You’ve got to say it. You’ve got to say it. We can’t say it. It’s you that’s got to give that message to them.’
“(Vol. 73, R. 517-18.)
“Alabama has constructed a detailed and precise capital sentencing statute. Juries are told precisely how they may arrive at their sentencing verdict: first, they must determine whether any aggravating circumstances exist; then, they must determine what mitigating circumstances exist; and lastly, they must weigh the aggravators against the mitigators. Sending ‘a message to bombers from Jefferson County’ is not an aggravating circumstance that may be considered in determining whether to sentence a capital defendant to death. Such statements have no relevance at the sentencing phase of a capital trial and were solely presented with the intention of having jurors ignore the law and improperly render a verdict of death based on communal pressure. See Darden v. Wainwright, All U.S. 168, 181 (1986); Bankhead v. State, 585 So.2d 97, 106 (Ala.Crim.App.1989).”
(C. 228-29.)
“This court has stated that ‘[i]n reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract.’ Bankhead v. State, 585 So.2d 97, 106 (Ala.Crim.App.1989), remanded on other grounds, 585 So.2d 112 (Ala.1991), affd on return to remand, 625 So.2d 1141 (Ala.Crim.App.1992), rev’d on other grounds, 625 So.2d 1146 (Ala.1993). See also Henderson v. State, 583 So.2d 276, 304 (Ala.Crim.App.1990), affd, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). ‘In judging a prosecutor’s closing argument, the standard is whether the argument “so infected the trial with unfairness as to make the resulting con *849 viction a denial of due process.” ’ Bank-head, 585 So.2d at 107, quoting Darden v. Waimoright, All U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). ‘A prosecutor’s statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury.’ Roberts v. State, 735 So.2d 1244, 1253 (Ala.Crim.App.1997), affd, 735 So.2d 1270 (Ala.), cert. denied, 5[2]8 U.S. 939, 120 S.Ct. 346, 145 L.Ed.2d 271 (1999). Moreover, ‘statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict.’ Bank-head, 585 So.2d at 106.”
Ferguson v. State, 814 So.2d 925, 945-46 (Ala.Crim.App.2000) (emphasis added), affd, 814 So.2d 970 (Ala.2001).
Although Moody alleged the specific statements that he believed constituted prosecutorial misconduct, he failed to plead any facts indicating the context in which those statements were made. As explained more fully in Part I.B.4 of this opinion, Moody did not even allege any facts in his petition regarding the crime, the State’s evidence, or the defense theory or evidence. In addition, Moody made only conclusory allegations that he was prejudiced by these prosecutorial comments, but failed to plead any facts indicating how he was prejudiced. Likewise, other than a bare allegation, Moody failed to plead any facts indicating how the cumulative effect of these comments prejudiced him. Looking at these allegations as pleaded, it is impossible for this Court to determine whether Moody would be entitled to relief, even if the allegations were true. See, e.g., Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003). Therefore, Moody failed to allege sufficient facts in his petition indicating that the prosecutor’s comments were improper, either individually or cumulatively, or that he was prejudiced by the comments and in turn, failed to plead sufficient facts to indicate that his appellate counsel was ineffective for not raising these claims of alleged prosecutorial misconduct, as well as a claim regarding the cumulative effect of the alleged misconduct, on appeal.
We note that although lack of specificity was not the reason for the circuit court’s summary dismissal of three of these claims, and although the State did not assert in its response lack of specificity as to two of those three claims, we may nonetheless affirm the circuit court’s judgment on this ground based on this Court’s opinion in McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007). As this Court noted in McNabb, Rule 32.3 provides only that “[t]he State shall have the burden of pleading any ground of preclusion ” (emphasis added), and the remainder of Rule 32 contains no requirements as to the content of the State’s response. Thus, we concluded in McNabb that the plain language of Rule 32 is clear that the burden of pleading in a Rule 32 petition is an initial burden placed on the petitioner and is not an affirmative defense that must be asserted by the State or found by the circuit court before it can be applied by this Court on appeal, as are the preclusions in Rule 32.2(a). See Ex parte Clemons, 55 So.3d 348 (Ala.2007). Because the failure to satisfy the pleading requirements is not an affirmative defense, this Court specifically held in McNabb that the pleading requirements in Rules 32.3 and Rule 32.6(b) could be applied sua sponte on appeal by this Court as a basis for affirming a circuit court’s judgment without running afoul of the Alabama Su *850 preme Court’s opinion in Ex parte Clemons, or due process.[14]
Because Moody failed to satisfy the pleading requirements in Rules 32.3 and Rule 32.6(b), summary dismissal of this claim of ineffective assistance of appellate counsel was proper.
4.
Finally, Moody asserted in his second amended petition that his appellate counsel was ineffective for not raising on appeal a claim that the State withheld evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He alleged:
“Appellate Counsel provided ineffective assistance of counsel in that he did not raise the Brady Issues set forth in the Petitioner/Defendant’s Amended Petition for Relief from Judgment.”[15]
(C. 558.) In Issue XII in his petition, which Moody incorporated by reference into this claim, Moody alleged that the State had withheld evidence in violation of Brady as follows:
“A defendant is entitled to exculpatory evidence in a criminal proceeding. Brady v. Maryland, 373 U.S. 83 (1963), including statements, impeachment evidence, and physical evidence. United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150 (1972); Ex parte Womack, 541 So.2d 47 (Ala.1988). In the context of a capital proceeding, the State is under a heightened obligation to provide discovery to the defendant, as the possibility of a death sentence is a special circumstance that places an increased obligation on the State. Ex parte Monk, 557 So.2d 832 (Ala.1989). In this case, the State failed to disclose numerous pieces of exculpatory and impeachment evidence.
“When investigating my case, the FBI conducted DNA tests of the saliva on the stamps affixed to the threatening letters admitted into evidence at my trial. The result of these DNA tests did not provide a match between myself and the DNA on those letters; in fact, the results excluded me entirely. This information was never provided to the defense.
“The FBI also failed to disclose several other leads that it had regarding suspects responsible for the bombings. Threatening letters that arrived in Texas contained the same numerical code used in the letters accompanying the bombings discussed at my trial; however, this fact was never made known to me. The FBI also received information that three unexploded pipe bombs at *851 tached to electricity poles in Los Ange-les bore the same characteristics as those used in the bombings for which I was found responsible. Again, this information was never disclosed.
“FBI agents purportedly checked all five bombs that I allegedly made against thousands of others in the FBI’s computerized bomb database; however, the FBI Explosives Unit had no such computerized database at that time. Information regarding the status of the FBI database at the time of my trial should have been provided to the defense.
“John Hamill[16] provided FBI officials with information that I could not have purchased the gun powder the State contended I acquired to create the bombs. Mr. Hamill informed federal agents that he had a conversation with Mark MeSwigen, a resident of Griffin, Georgia, who told Mr. Hamill that I could not have purchased the ‘Red Dot’ powder the State alleged I acquired because Mr. MeSwigen purchased the entire inventory of such powder available at the local store at that time. Federal agents, Alabama officials, and Georgia officials investigated the matter, but provided me with no reports regarding their investigation. In addition, Mr. MeSwigen provided a female agent from the Georgia Bureau of Investigation with one of the canisters of powder he had purchased at that time. This information similarly was not disclosed to me at trial.
“Roger Martz testified at my trial as an expert witness on explosives. However, the State failed to provide evidence that Martz did not have the training necessary to identify inorganic explosives or fillers or to engage in any type of explosives-residue analysis. In addition, the State failed to disclose that Martz was under investigation for professional misconduct at the time of my trial.
“In addition, at the time of my trial, the FBI had a 1990 report explaining that there were many differences between the 1972 and 1989 bombs introduced at trial. This report explained that the bombs were not unique enough to show anything relating to a ‘signature.’ Moreover, the report explained that many other bombs constructed by various individuals up through 1989, which were sent through the mails and examined by the FBI, shared characteristics with the 1972 and 1989 bombs. Because the State’s case rested almost entirely on showing the uniqueness of the five bombs and establishing a connection between all of them, this evidence would have greatly assisted in my defense.
“None of this information was provided to me at my trial. The State’s failure to provide me with crucial exculpatory and impeachment evidence violated my rights to due process and a fair trial protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the corresponding provisions of the Alabama Constitution, and applicable state law.”
(C. 280-32.)
“To prove a Brady violation, a defendant must show that ‘ “(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial.” ’ Johnson v. State, 612 So.2d 1288, 1293 (Ala.Cr.App.1992), quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir.1990), cert. denied, Stano v. Singletary, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). See Smith *852 v. State, 675 So.2d 100 (Ala.Cr.App. 1995). ‘ “The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability is a probability sufficient to undermine confidence in the outcome.” ’ Johnson, 612 So.2d at 1293, quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).”
Freeman v. State, 722 So.2d 806, 810 (Ala. Crim.App.1998).
After thoroughly reviewing Moody’s claim in this regard, we conclude that it was not sufficiently pleaded in compliance with Rule 32.3 and Rule 32.6(b). First, Moody failed to plead anywhere in his petition that appellate counsel was even aware of the alleged suppression of this evidence by the State in time to raise it on appeal. Second, although Moody identified the evidence he alleged was not provided to him by the prosecution, he failed to plead any facts in his petition indicating how this evidence was material, i.e., he pleaded no facts indicating that if the evidence had been provided to him, there is a reasonable probability that the result of his trial would have been different.
With respect to the allegation regarding DNA evidence, Moody alleged that DNA found on saliva on postage stamps affixed to “threatening letters” that were “introduced at [his] trial” did not match his DNA. However, nowhere in his petition did Moody even identify what these “threatening letters” were, much less plead any facts indicating how these “threatening letters” were relevant to the case or how his DNA not matching the DNA on the stamps on those letters would have benefited his defense.
With respect to the alleged “other leads” regarding supposed other “suspects” in the bombing, Moody made a bare allegation that other, unexploded, bombs with “the same characteristics” as the bomb that killed Judge Vance were found by the FBI in Los Angeles. However, he failed to identify what or how many of the characteristics of those bombs were “the same” as the bomb that killed Judge Vance. Indeed, he alleged no facts in his petition whatsoever regarding the bomb that killed Judge Vance. Nor did Moody allege in his petition when the alleged other bombs were supposedly found by the FBI or how the discovery of those other bombs would have been significant to his defense. Moody also made a bare allegation regarding other “threatening letters” that arrived in Texas with “the same numerical code used in the letters accompanying the bombings discussed at my trial.” However, as noted previously, Moody failed to allege any facts in his petition regarding these “threatening letters” or their relevance to the case.
Moody further alleged that he was entitled to information regarding the alleged lack of a computerized database of bombs. However, he failed to plead any facts indicating how such information would have aided his defense. Moody also alleged that there was evidence that he did not purchase “Red Dot” gunpowder as the State asserted at trial, but he failed to allege the relevance of the “Red Dot” gunpowder to the prosecution’s case or how evidence that he did not purchase it himself would have benefited his defense. More basically, Moody failed to even identify the “local store” he claimed sold its entire inventory of “Red Dot” gunpowder to someone else nor did he identify in his petition the store the State had alleged he had purchased the gunpowder from.
Moody further made a bare and conclu-sory allegation that the State did not disclose to him that its explosives expert was *853 not, in fact, qualified; however, Moody failed to allege what that expert’s qualifications were or why he believed the expert was not qualified. Finally, Moody alleged that “the 1972 and 1989 bombs” were not similar and that other bombs that “shared characteristics with the 1972 and 1989 bombs” had been sent through the United States mails by other individuals. However, Moody did not plead any facts regarding what the “1972” bomb was or its relevance to the case, nor did he plead any facts regarding the alleged dissimilarities between the 1972 and 1989 bombs. Moody also failed to plead any facts indicating the nature or extent of the “characteristics” shared by the bomb that lulled Judge Vance and other bombs mailed by other individuals.
Simply put, Moody did nothing more than identify the evidence he alleged was suppressed by the State and make bare allegations that it should have been disclosed. He alleged no facts in his petition or amended petitions regarding the facts of the crime, the evidence presented by the State, or the State’s theory of the case.[17] He likewise alleged no facts in his petition or amended petitions regarding his theory of defense or what, if any, evidence he presented in his defense. This Court noted in its opinion on direct appeal that the State’s case against Moody was based on circumstantial evidence. Yet, absent any factual pleadings regarding that circumstantial evidence and how it was used by the State to establish Moody’s guilt, Moody’s claims regarding “threatening letters,” “Red Dot” powder, and other bombs with similar “characteristics” to “the 1972 and 1989 bombs” make little sense and are not sufficient to satisfy his burden of pleading. In other words, even assuming Moody’s allegations in his petition are true, we cannot say he would be entitled to relief. See, e.g., Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003).[18]
Moreover:
“The term suppression ‘means non-disclosure of evidence that the prosecutor, and not the defense attorney, knew to be in existence.’ Ogden v. Wolff, 522 F.2d 816, 820 (8th Cir.1975), cert. denied, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). ‘The concept of “suppression” implies that the Government has information in its possession of which the defendant lacks knowledge and which the defendant would benefit from knowing.’ United States v. Natale, 526 F.2d 1160, 1170 (2d Cir.1975), cert. denied, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976).”
Donahoo v. State, 552 So.2d 887, 895-96 (Ala.Crim.App.1989).
“ ‘Because the government’s duty to disclose covers only evidence within the government’s possession, the government is not obliged to furnish information already known by the defendant, or information, evidence, or material that is available or accessible to the accused, which the defendant could obtain by exercising reasonable diligence. Discovery is also not required where the defendant knows of *854 the essential facts permitting one to take advantage of the evidence.’ ”
Vanpelt v. State, 74 So.3d 32, 69 (Ala.Crim. App.2009) (quoting 22A C.J.S. Criminal Law § 667 (2011)). Although Moody repeatedly alleged that the specified evidence was not “provided” or “disclosed” to him, he failed to allege anywhere within this claim that he did not already know about this evidence at the time of his trial, or that this evidence was not available or accessible to him through the exercise of reasonable diligence.[19]
Because Moody failed to plead sufficient facts indicating that the State suppressed evidence in violation of Brady, he necessarily failed to plead sufficient facts indicating that his appellate counsel was ineffective for not raising this claim on appeal. Therefore, summary dismissal of this claim of ineffective assistance of appellate counsel was proper.
C.
Finally, at various points throughout his arguments on appeal regarding his claims of ineffective assistance of counsel, Moody contends that the circuit court erred in considering his claims of ineffective assistance of counsel individually instead of cumulatively. He argues that “parsing] the claim” into separate subclaims contravenes established precedent from the United States Supreme Court. (Moody’s brief, at 19.)
Initially, we note that Moody did not raise this argument in the circuit court. “The general rules of preservation apply to Rule 32 proceedings.” Boyd v. State, 913 So.2d 1113, 1123 (Ala.Crim.App.2003). Therefore, because this argument was never presented to the circuit court, it is not properly before this Court for review.
Moreover, even if this argument were properly before this Court for review, it is meritless. In Taylor v. State, [Ms. CR-05-0066, October 1, 2010] — So.3d-(Ala.Crim.App.2010), this Court addressed and rejected an identical claim, explaining:
“Taylor also contends that the allegations offered in support of a claim of ineffective assistance of counsel must be considered cumulatively, and he cites Williams v. Taylor, 529 U.S. 362 (2000). However, this Court has noted: ‘Other states and federal courts are not in agreement as to whether the “cumulative effect” analysis applies to Strickland claims’; this Court has also stated: “We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel.’ Brooks v. State, 929 So.2d 491, 514 (Ala.Crim.App. 2005), quoted in Scott v. State, [Ms. CR-06-2233, March 26, 2010] — So.3d -,-(Ala.Crim.App.2010); see also McNabb v. State, 991 So.2d 313, 332 (Ala.Crim.App.2007); and Hunt v. State, 940 So.2d 1041, 1071 (Ala.Crim.App. 2005). More to the point, however, is the fact that even when a cumulative-effect analysis is considered, only claims *855 that are properly pleaded and not otherwise due to be summarily dismissed are considered in that analysis. A cumulative-effect analysis does not eliminate the pleading requirements established in Rule 32, Ala. R.Crim. P. An analysis of claims of ineffective assistance of counsel, including a cumulative-effect analysis, is performed only on properly pleaded claims that are not summarily dismissed for pleading deficiencies or on procedural grounds. Therefore, even if a cumulative-effect analysis were required by Alabama law, that factor would not eliminate Taylor’s obligation to plead each claim of ineffective assistance of counsel in compliance with the directives of Rule 32.”
— So.3d at - (emphasis added.) Here, all of Moody’s claims of ineffective assistance of counsel were either precluded or were insufficiently pleaded. Therefore, a cumulative-error analysis was not required in this ease. See also McWhorter v. State, [Ms. CR-09-1129, September 30, 2011] -— So.3d-(Ala.Crim.App.2011), and Bryant v. State, [Ms. CR-08-0405, February 4, 2011] — So.3d - (Ala. Crim.App.2011).
II.
Moody also contends that the circuit court erred in summarily dismissing his claim of newly discovered evidence[20] on the ground that it was insufficiently pleaded because, he says, he sufficiently pleaded all the elements of Rule 32.1(e).
In his amended petition, Moody alleged:
“The Petitioner adopts and incorporates by reference herein the allegations contained in paragraphs 1 through 65 of the Petition for Relief From Judgment filed pursuant to Rule 32, ARCP.
“Petitioner alleges material facts exist that establish Petitioner is innocent of the crime for which he was convicted or should not have received the sentence that Petitioner received. The facts establishing Petitioner’s innocence were not known by Petitioner or Petitioner’s counsel at the time of trial or sentencing or in time to file a Post-trial motion, or in time to be included in any previous collateral proceeding and could have not been discovered by any of those times through the exercise of reasonable diligence. Among other things, the facts establishing Petitioner’s innocence include, but are not limited to, the results of DNA tests which did not provide a match between Petitioner and the DNA on the aforementioned letters, but rather excluded Petitioner, the aforementioned threatening letters containing the same numerical code used in the letters accompanying the bombings discussed at Petitioner’s trial, three (3) unexploded pipe bombs attached to electricity poles in Los Angeles bearing the same characteristics as those used in bombings for which Petitioner was found responsible, the information John Hamill provided the FBI regarding his conversation with Mark McSwigen who purchased the entire inventory of the ‘Red Dot’ powder available at the local store at the relevant time, the cannister of powder Mark McSwigen provided an FBI agent from the Georgia Bureau of Investigation, the numerous material differences between the 1972 and 1989 bombs indicating there was no ‘signature’ or shared characteristics, and no fingerprints matching Petitioner’s were ever uncovered on any of the aforementioned bombs.
“Petitioner alleges that these facts, among others, establish that he is factu *856 ally innocent and entitled to relief even if Petitioner’s claim of factual innocence is not connected to a constitutional violation.”
(C. 270-71.)
Rule 32.1(e) provides:
“Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
[[Image here]]
“(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
“(1) The facts relied upon were not known by the petitioner or the petitioner’s counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
“(2) The facts are not merely cumulative to other facts that were known:
“(3) The facts do not merely amount to impeachment evidence;
“(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
“(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received.”
In this case, Moody failed to plead sufficient facts regarding each of the five elements in Rule 32.1(e). As explained in Part I.B.4. of this opinion, Moody failed to allege any facts in his petition or amended petitions regarding the crime, the evidence presented by the State, the State’s theory of the ease, his theory of defense, or what, if any, evidence he presented in his defense. Without any such factual assertions, Moody’s bare pleadings regarding the alleged newly discovered evidence clearly fail to satisfy the requirements in Rule 32.1(e).
More specifically, with respect to Rule 32.1(e)(1), although Moody made a bare and conclusory assertion that “[t]he facts establishing Petitioner’s innocence were not known by Petitioner or Petitioner’s counsel at the time of trial or sentencing or in time to file a Post-trial motion, or in time to be included in any previous collateral proceeding and could have not been discovered by any of those times through the exercise of reasonable diligence,” he failed to allege any actual facts in support of that assertion. As noted previously, the pleading of a conclusion is not sufficient to satisfy Rule 32.3 and Rule 32.6(b); only the pleading of facts in support of a conclusion satisfies Rule 32.3 and Rule 32.6(b). Here, Moody did not plead when he discovered the alleged evidence, how he discovered the alleged evidence, what efforts he took to obtain the alleged evidence, or why he could not have obtained the alleged evidence through reasonable diligence at an earlier time. Compare Ex parte Ward, 89 So.3d 720 (Ala. 2011) (holding that petitioner had sufficiently pleaded facts to satisfy Rule 32.1(e)(1) where petitioner pleaded in his petition exactly when he had discovered the evidence, pleaded a detailed account of the extensive measures he had taken to obtain the evidence, and pleaded the difficulties he faced in obtaining the evidence which indicated that the evidence could not have reasonably been discovered earlier). Therefore, Moody failed to plead sufficient facts in his petition to satisfy the requirements in Rule 32.1(e)(1).
*857 With respect to Rules 32.1(e)(2) and (e)(3), Moody did not allege anywhere in his petition that the evidence he believed constituted newly discovered evidence was not merely cumulative to other facts that were known and was not merely impeachment evidence. Moody did nothing more than identify the evidence he believed constituted newly discovered evidence and make a bare and conelusory allegation that the alleged newly discovered evidence “established] that he is factually innocent.” He failed to plead any facts indicating that the supposed newly discovered evidence would not have been merely impeachment evidence, i.e., that it would not have merely discredited the veracity of one or more witnesses, see Black’s Law Dictionary 820 (9th ed.2009) (defining “impeach” as “[t]o discredit the veracity of (a witness)”), or would have disputed the State’s evidence and/or destroyed or obliterated effect of the State’s evidence. See Ex parte Ward, 89 So.3d at 727 (holding that “ ‘[w]here the newly discovered evidence “tends to destroy or obliterate the effect of the evidence upon which the verdict rested it is more than impeaching for ... its tendency would be to defeat the verdict returned” ’ ”) (emphasis omitted) (quoting Register Propane Gas Co. v. Whatley, 688 So.2d 225, 229 (Ala.1996), quoting in turn Reynolds v. City of Birmingham, 29 Ala. App. 505, 507, 198 So. 360, 362 (1940)). Therefore, Moody failed to plead sufficient facts in his petition to satisfy the requirements in Rules 32.1(e)(2) and (e)(3).
With respect to Rules 32.1(e)(4) and (e)(5), in Ex parte Ward, the Aabama Supreme Court explained:
“Rule 32.1(e)(4) requires that ‘[i]f the facts had been known at the time of trial or of sentencing, the result probably would have been different’; Rule 32.1(e)(5) requires that ‘[t]he facts establish that petitioner is innocent of the crime for which petitioner was convicted....’
“... A common-sense reading of Rule 32.1(e) is one that requires a showing that the newly discovered facts go to the issue of the defendant’s actual innocence (as opposed to a procedural violation not directly bearing on guilt or innocence). Otherwise, the requirement of Rule 32.1(e)(4) — a showing that ‘the result probably would have been different’— would add nothing to the formula for relief created by Rule 32.1(e); Rule 32.1(e)(4) would be rendered meaningless in the face of the greater requirement imputed to Rule 32.1(e)(5) that the newly discovered facts ‘establish’ the defendant’s innocence.
[[Image here]]
“... As to the requirement in Rule 32.1(e)(4) that the result probably would have been different had the newly discovered evidence been presented to the jury, this calculation must be made based on the probative value of the newly discovered evidence and its relationship to the other evidence presented to the jury. See Ex parte Frazier, 562 So.2d 560, 571 (Aa.1989) (‘[I]f the jury had been afforded the opportunity to consider this new information [about the true extent of a key prosecution witness’s role in the crime] in conjunction with all of the other evidence introduced at trial, it would have reached a different result.’ (footnote omitted)).”
89 So.3d at 727-28. Here, the nature of the alleged newly discovered evidence itself suggests that it was not grounded in a procedural violation and, thus, would have been relevant to the issue of Moody’s guilt or innocence, as required by Rule 32.1(e)(5). However, because, as noted previously, Moody failed to plead any facts regarding the crime or the evidence presented at trial, he necessarily failed to *858 plead sufficient facts to indicate that the result of his trial probably would have been different had the newly discovered evidence been presented to the jury, i.e., he failed to plead facts indicating that the newly discovered evidence was “of substantial probative value in relation to the other evidence bearing on the question of ... guilt or innocence.” Ex parte Ward, 89 So.3d at 728 (emphasis added).
Therefore, because Moody failed to satisfy his burden of pleading all five of the elements of newly discovered evidence in Rule 82.1(e), summary dismissal of this claim was proper.
III.
Finally, Moody contends that the circuit court erred in summarily dismissing the remaining claims in his petition and amended petitions. The circuit court summarily dismissed all but one of the remaining claims on various preclusion grounds; the final claim was dismissed on pleading grounds. Although Moody argues on appeal that these claims entitle him to relief, he makes no argument regarding why he believes the claims were not subject to the preclusions in Rule 82.2 or were sufficiently pleaded.
The circuit court correctly found the following claims in Moody’s petition to be precluded by Rule 32.2(a)(4) because they were raised and addressed on appeal:
(1) That the trial court failed to satisfy its obligation to protect the rights of pro se litigants (Claim II in Moody’s petition);
(2) That § 15-12-21(e), as it read at the time of Moody’s trial, is unconstitutional (Claim III in Moody’s petition);
(3) That the trial court erred in denying his request for a continuance of the trial so that he could obtain counsel (Claim IV in Moody’s petition);
(4) That the trial court erred in not appointing him standby counsel to assist him in his defense (Claim V in Moody’s petition);
(5) That the trial court erred in allowing the State to introduce into evidence collateral crimes (Claim VI in Moody’s petition);
(6) That the trial court erred in allowing the State to introduce evidence of Moody’s racial animus toward African-Americans (Claim VII in Moody’s petition); and
(7) That his sentence of death violates the holding in Ring v. Arizona, 536 U.S. 584 (2002) (Claim VIII in Moody’s petition).
The circuit court also correctly found the following claims in Moody’s petition to be precluded by Rules 32.2(a)(5) because they could have been, but were not, raised and addressed on appeal:
(8) That the trial court erred in failing to sua sponte change the venue of his trial (Claim IX in Moody’s petition);
(9) That the trial court erred in not ensuring an adequate voir dire (Claim X in Moody’s petition);
(10) That the prosecutor engaged in several instances of misconduct (Claim XI in Moody’s petition); and
(11) That the State failed to disclose evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963) (Claim XII in Moody’s petition).[21]
*859 The final claim in Moody’s petition was a claim of juror misconduct. (Claim XIII in Moody’s petition.) Moody asserted in his petition:
“My right to due process and a fair and impartial jury was violated due to several jurors failure to respond truthfully to multiple questions on voir dire. See Morgan v. Illinois, 504 U.S. 719, 727 (1992); McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984); Ex parte Ledbetter, 404 So.2d 731, 733 (Ala.1981); see also Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981); Irvin v.Dowd, 366 U.S. 717, 722 (1961); United States v. Perkins, 748 F.2d 1519, 1534 (11th Cir.1984); O’Leary v. State, 438 So.2d 1375, 1375 (Ala.Crim.App.1983).o9l.
“Jurors, in order to remain impartial, must be guarded in their deliberations from outside influences that may unlawfully affect the verdict. The introduction of extraneous information into the deliberations in my case violated my rights to due process and a fair trial. Turner v. Louisiana, 379 U.S. 466, 472-73 (1965); Remmer v. United States, 347 U.S. 227, 229 (1954) (‘[T]he integrity of jury proceedings must not be jeopardized by unauthorized invasions.’); Ex parte Reed, 547 So.2d 596, 597 (Ala. 1989); Ex parte Troha, 462 So.2d 953, 954 (Ala.1984); Miles v. State, 75 So.2d 479, [480] (Ala.1954).”
(C. 232-33.)
Moody clearly failed to satisfy his burden of pleading under Rules 32.3 and 32.6(b) with respect to this claim. As the circuit court correctly found, Moody failed to identify a single juror who he believed did not answer questions truthfully during voir dire nor did he identify which questions he believes the jurors did not answer truthfully. In addition, Moody failed to plead what “extraneous” information he believes was considered during the jury’s deliberations or how that information prejudiced him. Therefore, the circuit court correctly found this claim to be insufficiently pleaded.
Because all of these claims were either subject to various preclusions in Rule 32.2 or insufficiently pleaded, summary dismissal was proper.
Based on the foregoing, the judgment of the circuit court summarily dismissing Moody’s Rule 32 petition is affirmed.
AFFIRMED.
WELCH, P.J., and WINDOM, KELLUM, BURKE, and JOINER, JJ„ concur.

. Moody was represented by counsel on appeal.

. Although the petition was not stamped as filed in the circuit clerk's office until March 29, 2005, Moody’s certificate of service states that he placed the petition in the prison mail system on March 23, 2005. Thus, the petition was deemed filed as of that date. See Ex parte Allen, 825 So.2d 271 (Ala.2002).

. Counsel styled the amendment as the "third” amended petition. However, the record contains only one previous amendment to Moody’s original petition. Therefore, the amended petition filed on July 20, 2009, was, in fact, his second amended petition.

. In its order, the circuit court identified six claims of ineffective assistance of pretrial counsel, not seven as we do. It treated claims (3), (4), and (5), as set out above, as a single claim, and treated a single sentence in Moody’s petition — specifically paragraph 5 of the petition alleging that ”[p]re-trial counsel failed to conduct an adequate independent investigation and failed to adequately represent me in pretrial proceedings” (C. 212) — as a separate claim. However, we do not consider the single sentence in paragraph 5 to be a separate claim of ineffective assistance of pretrial counsel. Rather, we construe it simply as an introductory sentence to claims (1) — (7), as set out above.

. Indeed, the record from Moody's direct appeal, see Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App. 1992) (this court may take judicial notice of its own records), indicates that Moody’s repeated complaints to the trial court about Turberville’s and Jaffe’s allegedly inadequate representation was one of the reasons they moved to withdraw.

. By the time of Moody’s trial, Ex parte Jackson had .been overruled by Ex parte Ingram. As noted earlier, Moody was charged with knowledge of the applicable rules of procedure regardless of his status as a pro se defendant.

. Because we find that summary dismissal of these claims was proper under Rules 32.2(a)(3) and (a)(5), we need not address the circuit court’s alternative findings.

. The State did not address claim (4) in its answers or motions for summary dismissal.

. The circuit court construed this claim as a substantive claim that Moody was prejudiced by the cumulative effect of the prosecutor’s alleged misconduct. The State takes the same position on appeal. As a substantive claim, the circuit court's finding that the claim was precluded by Rules 32.2(a)(3) and (a)(5) would be correct. However, we do not adopt that construction. Rather, we give Moody the benefit of the doubt and construe this as a claim that his appellate counsel was ineffective for not raising on appeal the issue of the cumulative effect of the prosecutor's misconduct. As a claim of ineffective assistance of appellate counsel, this claim is not precluded by Rules 32.2(a)(3) and (a)(5). However, as explained in Part I.B.3. of this opinion, we find this claim to be insufficiently pleaded.

. We note that in his second amended petition, Moody expanded on the factual allegations in support of his claim that his pretrial counsel were ineffective for not filing a motion for a change of venue, i.e., paragraph 6 of his original petition. However, he did not amend in his first or second amended petitions this claim — that his appellate counsel was ineffective for not arguing on appeal that the trial court erred in not sua sponte changing the trial's venue — to incorporate by reference those additional factual allegations. However, even if he had done so, those additional factual allegations would not alter our holding with respect to this claim.

. Moody actually cited to Issue VIII in his petition, not Issue X. However, Issue VIII was a claim based on Ring v, Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), not a claim regarding the adequacy of voir dire. Therefore, it is clear that Moody simply cited the wrong Roman numeral.

. See Part I.A. of this opinion, and the cases cited therein, where we address, and reject, Moody’s argument that he should be treated differently than other criminal defendants because he represented himself at trial.

. Moody actually cited to Issue X of his petition, not Issue XI. However, Issue X was a claim of inadequate voir dire, see Part I.B.2. of this opinion, not a claim of prosecutorial misconduct. Therefore, it is clear that Moody cited the wrong Roman numeral.

. We recognize that recently in Ex parte Ward, 89 So.3d 720, 725 (Ala.2011), the Alabama Supreme Court, in concluding that a Rule 32 petitioner had sufficiently pleaded a claim of newly discovered evidence, stated the following in passing: "The State did not assert in its response before the circuit court that Ward had failed to sufficiently plead this element, and Ward therefore had no opportunity to respond to that objection in the circuit court.” Although this sentence could be construed, when viewed in isolation, as suggesting that lack of specificity should be asserted by the State in the circuit court and the petitioner given an opportunity to respond, we do not believe that this single sentence was intended by the Supreme Court to amend the plain language of Rule 32 or to overrule this Court's holding in McNabb. If the Alabama Supreme Court wanted to amend Rule 32 or overrule this Court’s holding in McNabb, it would have done so directly and clearly and not with a single, passing, sentence.

. Although Moody here refers to claims that had been raised in his amended petition, no Brady claims were actually raised in his amended petition. Rather, Moody raised a single Brady claim in his original petition. Therefore, we presume that Moody simply misidentified the petition to which he was referring.

. John Hamill is not identified in the record.

. Indeed, Moody did not even allege in his petition what capital crime he was convicted of or who the victim of that crime was. Moody stated only: "On November 6, 1996, I was convicted in Jefferson County and on February 10, 1997, I was sentenced to death.” (C. 211.)

. Although this Court may take judicial notice of its own records, see note 5, supra, we are not required, in the Rule 32 context, to search the record from a petitioner’s direct appeal to ascertain the factual basis for a postconviction claim. As noted above, the full factual basis for the claim must be included in the petition itself.

. Moody did raise a separate claim of newly discovered evidence based in large part on the evidence that formed the basis of this claim and alleged within that claim that he did not know about this evidence. See Part II of this opinion. However, he did not amend this claim to incorporate by reference the allegation that he did not know about the evidence and could not have reasonably discovered it. In addition, as explained in Part II of this opinion, Moody failed to allege, even within his newly-discovered-evidence claim, when he discovered the alleged evidence, how he discovered the alleged evidence, what efforts he took to obtain the alleged evidence, or why he could not have discovered the evidence earlier through reasonable diligence.

. Moody couches this claim, both in his petition and in his brief on appeal, in terms of factual innocence. However, it is clearly a claim of newly discovered evidence.

. In its order, the circuit court correctly found this claim to be precluded because, as explained in note 19, supra, Moody failed to allege within this claim that he did not know about the evidence and could not have reasonably discovered the evidence in time to raise it at trial, in a motion for a new trial, or on appeal. See, e.g., McWhorter v. State, [Ms. CR-09-1129, September 30, 2011] — So.3d -(Ala.Crim.App.2011), and Bryant v. State, *859 [Ms. CR-08-0405, February 4, 2011] — So.3d - (Ala.Crim.App.2011), and the cases cited therein. We addressed Moody’s separate claim of newly discovered evidence that was based, in large part, on the evidence cited in this Brady claim in Part II of this opinion.